STATE OF NORTH CAROLINA v. BILLY RUDOLPH BRASWELL

No. 526A83

(Filed 8 January 1985)

1. **Criminal Law § 75.7— defendant not in custody when incriminating statements made to officers—statements admissible**

    Defendant was not denied his rights under the federal or North Carolina constitutions by the admission of statements made without *Miranda* warnings where the deputies to whom the statements were made were friends of defendant who went to defendant's house to tell him of his wife's shooting death; found defendant's empty patrol car in his driveway with the driver's door open and an empty revolver and a necktie bearing a bullet hole inside; discovered the back door to the house ajar and stepped in; found defendant, who told them to come in, sitting in a recliner with two gunshot wounds to the chest; and administered emergency medical treatment and called an ambulance. A reasonable person in defendant's position would not have believed himself to be in custody, and the court's finding of voluntariness on *voir dire* was supported by the evidence.

2. **Constitutional Law § 66— defendant absent from voir dire of witness—no error**

    Defendant waived his right to be present during a *voir dire* hearing concerning the admissibility of certain testimony where the trial judge announced his decision to have a *voir dire* hearing following an objection by defendant's counsel, defendant knew or should have known that a *voir dire* hearing would be held, neither defendant nor his counsel asserted his right to attend, and his counsel was present at the hearing. Furthermore, any error was harmless since defendant was present when the testimony was presented to the jury and there is nothing in the record to show that defendant's presence at direct examination significantly aided his counsel on cross-examination.

3. **Homicide § 17.2; Criminal Law § 80.1— first-degree murder—letters of defendant implying intent to murder—admissible**

    In a prosecution for first-degree murder, a proper foundation was laid for three letters written by defendant which implied that he intended to murder his wife and commit suicide where a sheriff testified that the victim had found the letters in defendant's coat and revealed some of the contents to him, where defendant stated that he wrote the letters, and where the letters were written a little more than a month before the murder.

4. **Constitutional Law § 48— test for effective assistance of counsel**

    The test set out in *Strickland v. Washington*, --- U.S. ---, 80 L.Ed. 2d 674, is expressly adopted as a uniform standard to be applied to measure ineffective assistance of counsel under the North Carolina Constitution. Art. I, §§ 19 and 23, N. C. Constitution.

**5. Constitutional Law § 48— first-degree murder—defendant not denied effective assistance of counsel**

Defendant was not denied the effective assistance of counsel where the evidence of his guilt was overwhelming and the alleged errors of defense counsel related to actions on rulings by the trial court which were not prejudicial to defendant, evidence which would have been merely cumulative, or the interviewing and preparation of defense witnesses who could not have aided defendant or who gave the only favorable testimony they could give. It is not reasonably probable that the jury would have reached a different result had none of the alleged errors of counsel occurred. U.S. Constitution amendments VI and XIV.

Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from the judgment entered by *Llewellyn, J.,* at the 23 May 1983 Criminal Session of PITT County Superior Court. Heard in the Supreme Court 15 November 1984.

Defendant was charged in an indictment, proper in form, with the first-degree murder of his wife, Lillie Braswell. Following a verdict of guilty he was sentenced to life imprisonment.

The State's evidence tended to show that Lillie Braswell had moved out of the family home a few days before her death. On the morning of 27 September 1982 defendant, who was a deputy sheriff, was in uniform and driving an unmarked Pitt County Sheriff's Department vehicle when he passed his wife's car on the highway, and after turning around and following her for a short distance motioned her to pull over. After they had stopped, Lillie Braswell entered defendant's car. At some point while she was in the car defendant drew his service revolver and shot her four times. Mrs. Braswell attempted to leave the car and collapsed on the shoulder of the road where her body was discovered a short time later by another driver. After the shooting defendant drove back to his home.

On being notified of the shooting Deputy Nobles and SBI Agent Honeycutt arrived at the scene. Deputy Nobles recognized Lillie Braswell and left the scene to locate defendant. As he passed by defendant's residence he spotted a silver unmarked patrol car under the carport. Deputy Nobles then contacted Chief Deputy Oakley and returned to defendant's residence with Oakley and two other officers. Upon arriving they noticed that the

driver's door of the patrol car was open and found on the front seat a sheriff's uniform necktie with a bullet hole in it, a Colt revolver, and some papers. The officers, seeing the back door to the house ajar, entered, and observed defendant sitting in a recliner. A small handgun was lying on the floor nearby, and defendant was found to have suffered two gunshot wounds to the chest. The officers administered emergency medical treatment and summoned an ambulance.

While the officers were in the house defendant stated that he had not meant to hurt his wife and just wanted to be left alone to die. Upon being asked what happened to the gun that he had shot himself with he replied that it was beside the chair and that he had used two guns. These statements were recorded by Deputy Vandiford. Defendant objected to the introduction of this and other evidence at trial which, together with his plea of ineffective assistance of counsel, is the subject of this appeal.

*Rufus L. Edmisten, Attorney General, by Donald W. Stephens, Special Deputy Attorney General, for the State.*

*Harrell, Titus and Hassell, by Richard C. Titus and Robert A. Hassell for the defendant-appellant.*

MEYER, Justice.

I.

[1] Defendant argues that the trial court erred by admitting into evidence the revolver found in his house and the statements made by him in response to questions asked by Chief Deputy Oakley on the grounds that they were obtained in violation of his rights under the fifth and fourteenth amendments to the United States Constitution and article I, §§ 19 and 23 of the North Carolina Constitution. Defendant bases his argument on his contention that he was in custody once the officers entered his house and that they were required to inform him of his rights under the rule of *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694 (1966) before questioning him. After a careful review of the evidence we conclude that defendant was not in custody when the officers entered his house and hold that defendant's constitutional rights have not been violated.

State v. Braswell

The rule of *Miranda* requiring that suspects be informed of their constitutional rights before being questioned by the police only applies to custodial interrogation. *State v. Clay*, 297 N.C. 555, 559, 256 S.E. 2d 176, 180 (1979). A suspect is in custody when a reasonable person in his position would believe that "he had been taken into custody or otherwise deprived of his freedom of action in any significant way. . . ." *State v. Davis*, 305 N.C. 400, 410, 290 S.E. 2d 574, 580-81. Ordinarily, when a suspect is not in custody at the time he is questioned any admissions or confessions made by him are admissible so long as they are made knowingly and voluntarily. *State v. Connley*, 297 N.C. 584, 589-90, 256 S.E. 2d 234, 237 (1979), *cert. denied*, 444 U.S. 954, 62 L.Ed. 2d 327 (1979). A careful examination of the circumstances surrounding the officers' entry into defendant's residence reveals that the officers were justified in making the entry and in questioning defendant.

Deputies Oakley and Nobles were friends of defendant and had gone to his house in order to inform him of his wife's death. Upon finding defendant's empty patrol car in his driveway with the driver's door open, containing an empty revolver and a necktie bearing a bullet hole, the officers had good reason to believe that defendant might be injured and in need of assistance. This alone would justify their entry pursuant to N.C.G.S. § 15A-285 which authorizes entry by a police officer into buildings, vehicles, etc. when he believes it is reasonably necessary to save a life or prevent serious bodily harm. *State v. Jolley*, 312 N.C. 296, 321 S.E. 2d 883 (1984).[1] Further, when the officers discovered the back door to the house ajar and stepped in, defendant, who was very pale and sitting in a recliner, told them to come in. They did so and discovered the defendant had suffered two gunshot wounds

1. Many states have adopted emergency entry exceptions to the fourth amendment. *See People v. Amato*, 193 Colo. 57, 562 P. 2d 422 (1977); *State v. Miller*, 486 S.W. 2d 435 (Mo. 1972); *People v. Mitchell*, 39 N.Y. 2d 173, 383 N.Y.S. 2d 246, 347 N.E. 2d 607 (1976), *cert. denied*, 426 U.S. 953, 49 L.Ed. 2d 1191 (1976); *People v. Brooks*, 7 Ill. App. 3rd 767, 289 N.E. 2d 207 (1972); *Lebedun v. State*, 283 Md. 257, 390 A. 2d 64 (1978); *State v. Max*, 263 N.W. 2d 685 (S.D. 1978). The United States Supreme Court has also held that warrantless entries by police officers and other public officials are justified if there is a compelling need and no time to secure a warrant. *Michigan v. Tyler*, 436 U.S. 499, 509, 56 L.Ed. 2d 486, 498 (1978) (firemen need not obtain warrant or consent to enter a burning building and once inside may seize evidence of arson in plain view).

to the chest, called an ambulance, and administered emergency medical treatment. These facts demonstrate that the officers had ample justification to enter defendant's house.

After the officers had found him, defendant told them that he wanted to die and not to call the rescue squad. Defendant also stated that he had not wanted to hurt his wife but that she would not listen to him. Deputy Oakley noticed that defendant's holster was empty and asked where his gun was and what had he done. Defendant replied that he had two guns, one on the floor by his chair and one in the patrol car. Deputy Vandiford noted defendant's answer and some of his other statements in his notebook. He testified that Deputy Oakley, who was a close friend of defendant, was not interrogating defendant but was talking to him like a father in an attempt to calm him.

Once the deputies had entered defendant's house their primary purpose was to preserve his life and keep his condition from worsening before the ambulance arrived. Viewed objectively there is nothing in the officers' conduct that would lead a reasonable person in defendant's position to believe that he was in custody. The fact that the officers had probable cause to believe that defendant had murdered his wife is immaterial for two reasons. First, the officers testified that they did not go to defendant's house to arrest him, but to inform him of his wife's death. Second, any subjective intent the officers may have had to arrest defendant is immaterial because their subjective intent is irrelevant to the question of whether a reasonable person in defendant's position would believe himself to be in custody. *Davis*, 305 N.C. at 410, 290 S.E. 2d at 580-81. Therefore, we hold that defendant was not in custody while Deputies Oakley, Nobles and Vandiford were in his house, and they were under no duty to inform defendant of his constitutional rights before questioning him.

Even though defendant was not entitled to be informed of his constitutional rights his answer to Deputy Oakley's question concerning the location of his gun is inadmissible unless it was voluntarily and understandingly made. *Connley*, 297 N.C. at 589-90, 256 S.E. 2d at 237 (1979). The trial court properly held a voir dire hearing during which Deputy Vandiford testified, *inter alia*, that defendant was rational when he answered the questions. After

the hearing was concluded the trial court found as a fact that no threats or promises of reward were made to defendant and that he was competent at the time he made his statements. "Findings of fact made by the trial judge following a voir dire hearing on the voluntariness of a defendant's confession are conclusive on appeal if supported by competent evidence in the record." *State v. Baker*, 312 N.C. 34, 39, 320 S.E. 2d 670, 674 (1984). The trial court's findings that no threats or promises were made to defendant and that he was competent are supported by competent and substantial evidence and are thus binding on this Court. The trial court's conclusion that defendant's statements were voluntarily and understandingly made is supported by the findings. Defendant was not denied his rights under the federal constitution or the North Carolina Constitution.

II.

[2] Approximately midway through the State's case, Sheriff Ralph Tyson of Pitt County was called to the stand. Defendant objected, apparently on the basis that the testimony would be hearsay, and the trial judge recessed the court in order to conduct a voir dire hearing. For some reason not disclosed by the record defendant did not attend the hearing though his counsel was present. Defendant argues that by conducting the hearing out of his presence the trial court denied him his rights under the sixth and fourteenth amendments of the United States Constitution to confront the witnesses against him. Defendant denies that he waived his confrontation rights and contends that, because he was tried upon an indictment charging him with a capital felony, he is prevented by the public policy of the State from waiving his right to be present at any stage of the trial.

It is well-established that under both the federal and North Carolina constitutions a criminal defendant has the right to be confronted by the witnesses against him and to be present in person at every stage of the trial. *State v. Moore*, 275 N.C. 198, 208, 166 S.E. 2d 652, 659 (1969). The constitutional right of an accused *to be confronted by* the witnesses against him is a personal privilege which he may waive expressly or by a failure to assert it in apt time even in a capital case. *Id.* at 209-10, 166 S.E. 2d at 659-60. However, when a defendant is being tried for a capital felony public policy prevents the accused from waiving his right

*to be present* at any stage of the trial. *Id.* at 209, 166 S.E. 2d at 659.

Because the State announced that it did not seek the death penalty in this case for lack of any aggravating circumstance the case lost its capital nature. *State v. Leonard,* 296 N.C. 58, 62, 248 S.E. 2d 853, 855 (1978). For that reason defendant's constitutional right to be present at all stages of the trial was a purely personal right that could be waived expressly or by his failure to assert it.

The record does not disclose an express waiver by defendant of his right to attend the hearing. However, defendant may also waive this right by a failure to timely assert it, as he has done in this case. The trial judge announced his decision to have a voir dire hearing on the admissibility of Sheriff Tyson's testimony following an objection by defendant's counsel. Defendant does not contend that he was absent from the courtroom while the State was presenting its case, and we conclude that defendant knew or should have known that a voir dire hearing of Sheriff Tyson would be held. Defendant, an experienced deputy sheriff, had attended previous voir dire hearings during the course of the trial and doubtless knew the general purpose of a voir dire. Yet, neither he nor his counsel asserted his right to attend. The most likely reason for defendant's absence is that neither he nor his counsel felt that his presence was necessary. Defendant's counsel was present in the courtroom at the time the trial judge announced his intention to hold a voir dire hearing and at the hearing itself. In a non-capital case counsel may waive defendant's right to be present through failure to assert it just as he may waive defendant's right to exclude inadmissible evidence by failing to object. The inaction of defendant and his counsel amounted to a failure to timely assert defendant's right to be present. While it is the better practice for the trial judge to obtain an explicit waiver from a defendant before conducting a voir dire hearing or any other important proceeding in the defendant's absence, it was not error for him to fail to do so.

Assuming *arguendo* that the trial judge erred in conducting the hearing out of defendant's presence, defendant was not prejudiced thereby. The purpose of the voir dire hearing was to determine, according to the test of *State v. Alston,* 307 N.C. 321, 298 S.E. 2d 631 (1983), whether it was necessary for Sheriff Tyson to

State v. Braswell

recount what the victim had previously said to him concerning her fear of the defendant and whether there was a reasonable probability that the sheriff's hearsay testimony would be truthful. The trial court found the testimony to be admissible, and defendant has not challenged that ruling. A transcript of Sheriff Tyson's voir dire testimony is available to us and we have reviewed it for comparison against his testimony on direct and cross-examination. There is nothing in the record to suggest that defendant's presence at the direct examination of Sheriff Tyson significantly aided his counsel on cross-examination, and we fail to see how defendant's presence could have altered the outcome of the voir dire hearing.

"Every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt." *State v. Taylor*, 280 N.C. 273, 280, 185 S.E. 2d 677, 682 (1972). The right to be present at all critical stages of the prosecution is subject to harmless error analysis. *Rushen v. Spain*, --- U.S. ---, 78 L.Ed. 2d 267, 272 n. 2 (1984). We believe that denial of a defendant's right to confront the witnesses against him is subject to the same harmless error analysis. That is particularly true when the alleged denial consists of the voir dire examination, in the presence of defendant's counsel, of a witness for the State who substantially repeats his voir dire testimony at trial. It is difficult to imagine any way in which defendant was prejudiced by his failure to attend the hearing. After examining the record and assuming error *arguendo* we conclude that any error which may have resulted from defendant's failure to attend the hearing is harmless beyond a reasonable doubt.

III.

[3] At trial three letters written by defendant, which implied that he intended to murder his wife and commit suicide, were admitted into evidence over defendant's objection. Defendant argues that these letters were admitted without proper foundation and are irrelevant. He also contends that the letters were admitted in violation of the rule against hearsay. These arguments are without merit.

A proper foundation for admission of the letters was laid by Sheriff Tyson's testimony that the victim had found the letters in defendant's coat and revealed some of the contents to him and by defendant's statement that he wrote the letters on August 15. From the context of the statement it appears that defendant was referring to 15 August 1982, a little more than a month before his wife's death on 27 September 1982. This testimony amply demonstrates that defendant wrote the letters, and that is all that is required. Threats by the defendant in a homicide case have always been freely admitted to identify him as the killer, disprove accident or justification, and to show premeditation and deliberation. *State v. Myers*, 299 N.C. 671, 675, 263 S.E. 2d 768, 771 (1980). Remoteness in time between the threat and the homicide goes only to the weight of the evidence. *Id.*; *State v. Shook*, 224 N.C. 728, 730, 32 S.E. 2d 329, 331 (1944). Such threats have been held to be admissible even though they were made some years before the homicide. *State v. Bright*, 215 N.C. 537, 2 S.E. 2d 541 (1939) (two years); *State v. Payne*, 213 N.C. 719, 197 S.E. 573 (1938) (three or four years). When a husband is charged with murdering his wife the State may introduce evidence covering the entire period of his married life to show malice, intent, and ill will toward the victim. *State v. Creech*, 229 N.C. 662, 670, 51 S.E. 2d 348, 354 (1949). Here, the threats were made less than two months before the murder. We hold that the trial court did not err in admitting the letters. We do not discuss defendant's argument that the letters were admitted in violation of the rule against hearsay since he has failed to address that point in his brief. N.C. R. App. P. 28(a).

IV.

**[4]** By motion for appropriate relief filed with this Court, the defendant contends that he was irreparably prejudiced by ineffective assistance of counsel in violation of his right to a fair trial under the sixth and fourteenth amendments to the United States Constitution. We have carefully examined the record and hold that defendant was afforded a fair trial.

A defendant's right to counsel includes the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 25 L.Ed. 2d 763, 773 (1970). When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of

reasonableness. *Strickland v. Washington,* --- U.S. ---, 80 L.Ed. 2d 674, 693 (1984). In order to meet this burden defendant must satisfy a two part test.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.* (Emphasis added).

*Id.* at ---, 80 L.Ed. 2d at 693.

Defendant has also argued that the conduct of counsel violated his rights under Article 1, §§ 19 and 23 of the North Carolina Constitution, perhaps suggesting that the North Carolina test for ineffective assistance of counsel is separate from and less stringent than the standards for ineffective assistance of counsel under the federal constitution, as interpreted by *Strickland v. Washington.* We disagree. In *State v. Weaver,* 306 N.C. 629, 295 S.E. 2d 375 (1982), we adopted the federal standard for ineffective assistance of counsel set out in *McMann v. Richardson,* 397 U.S. 759, 25 L.Ed. 2d 763 (1970). In so doing, we noted that "[t]he courts . . . have consistently required a stringent standard of proof on the question of whether an accused has been denied constitutionally effective representation. . . . To impose a less stringent rule would be to encourage convicted defendants to assert frivolous claims which would result in unwarranted trial of their counsels." 306 N.C. at 640, 295 S.E. 2d at 381 [quoting *State v. Milano,* 297 N.C. 485, 494, 256 S.E. 2d 154, 159 (1979) and *State v. Sneed,* 284 N.C. 606, 613, 201 S.E. 2d 867, 871-72 (1974)]. *Strickland v. Washington* does no more than explain the test to be applied in interpreting the *McMann* standard. Indeed, the test for prejudice set out in *Strickland* comports fully with our statutorily enacted test for prejudice under North Carolina law. *See* N.C.G.S. § 15A-1443(a). Therefore, we expressly adopt the test set out in *Strickland v. Washington* as a uniform standard to be applied to measure ineffective assistance of counsel under the North Caro-

lina Constitution. Under these standards, the defendant was not denied effective assistance of counsel.

[5]   The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings. *Strickland* at ---, 80 L.Ed. 2d at 698. This determination must be based on the totality of the evidence before the finder of fact. *Id.* at ---, 80 L.Ed. 2d at 698.

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at ---, 80 L.Ed. 2d at 699-700.

Thus, if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient. After examining the record we conclude that there is no reasonable probability that any of the alleged errors of defendant's counsel affected the outcome of the trial.

The evidence of defendant's guilt was overwhelming. Letters written by him before the crime strongly imply that he intended to kill his wife and then commit suicide. The uncontradicted evidence in this case fully supports this explanation of the victim's

death and Deputy Braswell's injuries. There was irrefutable evidence that defendant and his wife were having marital problems, and defendant admitted to having struck his wife in the past. Witnesses who drove by defendant's car at the time of the shooting saw the victim fall out of his patrol car and remarked that defendant appeared calm and unhurt. Another witness saw what was certainly defendant's unmarked patrol car drive away at a high rate of speed without weaving or leaving the road after stopping at an intersection. When defendant was found at his home suffering from two gunshot wounds he stated that he had not intended to hurt his wife. He also said he wanted to be left alone to die and that he would otherwise go to prison. All of this evidence was admissible, despite defendant's claims to the contrary, and is particularly damning because defendant did not *at that time* claim that his wife had shot him or that he had acted in self-defense.

The only evidence defendant had to rebut the State's case was his assertion that his wife shot him once and then inexplicably remained sitting across from him without firing again while defendant drew his revolver and shot her four times. Since defendant had only this unlikely story for a defense it is highly improbable that a reasonable jury could reach any conclusion other than that defendant had murdered his wife. However, defendant argues that he was denied the effective assistance of counsel in the following respects:

(a) First, counsel failed in (1) not vigorously opposing the introduction of the statements defendant made to the officers who came to his house, (2) allowing the voir dire hearing on Sheriff Tyson's testimony to be held in defendant's absence and (3) not vigorously objecting to the introduction into evidence of nor seeking limiting instructions on the three letters written by defendant which implied that he intended to kill his wife. Having previously examined each of these arguments and having found no prejudice to defendant, we will not address them further.

(b) Counsel allowed the introduction of other letters and a cassette recording that were not dated to show motive and state of mind.

Whether counsel erred on this point is immaterial. The letters and cassette recording merely restate what was in the other

three letters and were merely cumulative. Defendant was not prejudiced by introduction of this evidence.

(c) Counsel failed to adequately cross-examine defendant's son, and during cross-examination elicited adverse testimony including hearsay regarding defendant's prior marital problems.

While this testimony was damaging and some of it may have been inadmissible it would not have affected the outcome of the trial. The marital disharmony experienced by defendant and his wife and the contents of the three letters implying that defendant intended to murder his wife and commit suicide had already been put before the jury by clearly admissible evidence. The adverse testimony of defendant's son was merely cumulative.

(d) Counsel failed to properly interview defense witness Chief Deputy Oakley.

While Deputy Oakley's testimony did not assist defendant greatly it did contradict some of what State's witness Deputy Vandiford said. There was little Oakley or any other witness would testify to that would aid defendant, and it is difficult to see how defendant was prejudiced in any way by counsel's failure to interview Oakley before examining him.

(e) Counsel failed to properly prepare SBI Chemist Creasy as a defense expert witness and failed to timely object to State cross-examination concerning experiments Creasy conducted with the murder weapon.

After examining the testimony of Mr. Creasy, we cannot discover any way in which the actions of counsel prejudiced defendant. Mr. Creasy testified that handwipings from the palms of the victim revealed concentrations of barium, lead and antimony that were consistent with the victim having fired a revolver. On cross-examination Mr. Creasy testified that based on test firings by him the residue found on the victim's hands could also have been the result of her being shot at close range, and in his opinion that was more likely. On redirect examination counsel brought out the fact that Mr. Creasy had used the service revolver of defendant to perform the tests rather than the Smith and Wesson revolver with which defendant claimed the victim had shot him. Defendant now argues that he was prejudiced by counsel's failure

to object to the testimony concerning the tests on the service revolver conducted by Mr. Creasy. While it is possible that such tests might have been improperly admitted, defendant was not prejudiced by their admission. Counsel got from Mr. Creasy what he obviously wanted, an admission that the results of the hand-wiping tests were consistent with the victim having fired a revolver. This lent some support to defendant's claim of self-defense. Since Mr. Creasy testified that such tests could not conclusively indicate whether Deputy Braswell had fired the gun, counsel had obtained from Mr. Creasy the only favorable testimony that the witness could give. Mr. Creasy's testimony that the results of the handwiping tests were also consistent with the victim having been shot at close range did not significantly strengthen the State's case since defendant claimed to have shot the victim with his service revolver in self-defense.

In summary, we conclude that counsel's conduct did not affect the outcome of the trial.

After carefully reviewing the evidence in this case according to the standards laid down in *Strickland v. Washington*, --- U.S. ---, 80 L.Ed. 2d 674, we hold that it is not reasonably probable that the jury would have reached a different result had none of the alleged errors of counsel occurred. Therefore, defendant was not denied effective assistance of counsel and received a fair trial as required by the sixth and fourteenth amendments of the United States Constitution.

The defendant's motion for appropriate relief is denied. Based on our review of the record, we hold that defendant has received a fair trial free from prejudicial error.

No error.

Justice VAUGHN did not participate in the consideration or decision of this case.