THORNBURG, Judge.
 

 Defendant was found guilty of four counts of first degree statutory sexual offense and four counts of taking indecent liberties. He was sentenced to four consecutive terms of imprisonment of a minimum term of 144 months and a maximum term of 182 months.
 

 The State presented evidence tending to show that in March 2002, the victim, born in 1993, began spending weekends with defendant in the residence defendant shared with his twin brother. The victim would sleep in the same bed with defendant, who was born in 1951. After a few weekends without incident, defendant began to fondle the victim's penis and perform fellatio on him. Defendant also showed the boy "dirty movies." One evening defendant'sbrother came into the bedroom while defendant was performing fellatio on the boy and the two brothers engaged in an argument. In October 2002 the boy informed his mother that he did not want to visit defendant any more because defendant was "touching him on his privates."
 

 Defendant gave a statement to Detective Tonya Rusher of the Rowan County Sheriff's Department in which he admitted engaging in sexual activity with the boy. Defendant contended the boy initiated the sexual activity by putting his hand into defendant's pants and feeling his penis. Defendant stated the two performed reciprocal acts of masturbation and fellatio and watched sex movies together on the Playboy channel. One evening, defendant's brother came into defendant's bedroom while he was performing fellatio on the boy. Defendant asserted that the boy pulled his hair and forced him to engage in the sexual acts.
 

 Defendant testified and acknowledged sleeping in the same bed with the victim, but he denied engaging in any sexual activity with the boy. He recanted the statement he gave to Detective Rusher.
 

 Defendant's brother also testified on defendant's behalf and denied coming into defendant's bedroom and finding defendant engaged in fellatio with the boy.
 

 Defendant brings forward two assignments of error.
 

 First, he contends the trial court erred by allowing defendant's brother to testify in violation of defendant's rights to due process of law and effective assistance of counsel. The record shows that after defendant testified, defendant's counselstated for the record that defendant, against advice of counsel, desired to call his brother as a witness. Counsel stated he had advised defendant that if the brother testified, a prior statement by the brother inculpating defendant would be introduced by the prosecution. The following colloquy occurred between the court and defendant:
 

 THE COURT: All right. Mr. Canupp, stand up, please. Do you understand that if your brother testifies the District Attorney is going to ask him about this statement that he made to Detective Rusher about walking in on you and [victim]? Do you understand that?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: And you understand that your lawyer is advising you that because of that statement your brother made he may not be a good witness for you? Do you understand that?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: And your lawyer says that you still want him to call your brother as a witness, is that correct?
 

 THE DEFENDANT: I will just say, no.
 

 THE COURT: You do not want your brother to testify? I need an answer.
 

 THE DEFENDANT: I'm thinking. That's up to him, if he wants to call him or not.
 

 MR. SHOAF: No, sir, I've left that up to you.
 

 THE COURT: That's not up to your lawyer. He says he's left it up to you. So we need to know whether you want your brother to be a witness or not.
 

 THE DEFENDANT: I'd like - I'd like him to be a witness to me. He was there.
 

 THE COURT: All right. So you understand that he's going to be questioned about this statement he made about walking in on you and [victim], but you want him to be a witness for you?
 

 THE DEFENDANT: Would he be arrested?
 

 THE COURT: Sir?
 

 THE DEFENDANT: I mean, will he be arrested?
 

 THE COURT: I can't think of any reason why.
 

 MR. SHOAF: No, he will not be arrested.
 

 THE COURT: Not yet.
 

 THE DEFENDANT: No?
 

 MR. SHOAF: Not for this testimony, no. So do you want him?
 

 THE DEFENDANT: Yeah.
 

 Defendant contends that because of his deficient mental functioning, the court should not have allowed him to overrule his counsel's wishes.
 

 The attorney-client relationship has traditionally rested on principles of agency and not of guardian and ward.
 
 State v. Barley,
 

 240 N.C. 253
 
 , 255,
 
 81 S.E.2d 772
 
 , 773 (1954).
 

 While an attorney has implied authority to make stipulations and decisions in the management or prosecution of an action, such authority is usually limited to matters of procedure, and, in the absence of special authority, ordinarily a stipulation operating as a surrender of a substantial right of the client will not be upheld.
 

 Id.
 
 at 255,
 
 81 S.E.2d at 773
 
 . The attorney is bound to comply with the client's lawful instructions and the attorney's actions arelimited to the scope of authority given by the client.
 
 State v. Ali,
 

 329 N.C. 394
 
 , 403,
 
 407 S.E.2d 183
 
 , 189 (1991). Generally, tactical decisions - such as what witnesses to call, what jurors to accept or strike, or what motions to make - are within the province of the lawyer.
 
 Id.
 
 at 404,
 
 407 S.E.2d at 189
 
 . "However, when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client's wishes must control; this rule is in accord with the principal-agent nature of the attorney-client relationship."
 
 Id.
 
 at 404,
 
 407 S.E.2d at 189
 
 . An attorney in this situation should make a record of the circumstances, the advice given to the client, the reasons for the advice, the client's decision, and the conclusion reached.
 
 Id.
 
 at 404,
 
 407 S.E.2d at 189
 
 .
 

 Here, defendant's attorney made the requisite record and the court made inquiry to determine to its satisfaction that the decision made by defendant was voluntarily and intelligently made. Having just heard defendant testify and speak with regard to the matter at hand, the court could make its own determination as to whether defendant had the mental capacity to make this decision. We conclude defendant was not denied his right to counsel by being allowed to overrule counsel.
 

 Second, defendant contends that he was denied effective assistance of counsel because counsel failed to obtain a report from a psychologist in time to submit it in support of motions to admit defendant to Dorothea Dix Hospital for a competencyevaluation and to suppress his statement on the ground his waiver of right to remain silent was not intelligently made.
 

 To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that counsel's deficient performance was prejudicial.
 
 State v. Braswell,
 

 312 N.C. 553
 
 , 562,
 
 324 S.E.2d 241
 
 , 248 (1985). To demonstrate the latter defendant must show that a reasonable probability exists that a different outcome would have resulted if counsel's performance had not been deficient.
 
 Id.
 
 at 563,
 
 324 S.E.2d at 248
 
 . "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient."
 
 Id.
 
 at 563,
 
 324 S.E.2d at 249
 
 .
 

 Here, the report of the psychologist later obtained by defendant does not state that defendant lacked capacity to proceed to trial or to make voluntary statements. Thus, even if counsel had the report in time to submit it to the court, there is no reasonable probability that the result of the motions hearing would have been different.
 

 We hold defendant received a fair trial, free from prejudicial error.
 

 No error.
 

 Judges HUDSON and STEELMAN concur.
 

 Report per Rule 30(e).