STATE OF NORTH CAROLINA
v.
JOHNNY RICHARD GERALD, JR.

No. COA12-1231

Filed 7 May 2013

**1. Appeal and Error—notice of appeal—proof of service**

The State waived defendant's failure to include proof of service on the State in his notice of appeal where the State did not object to the appeal and participated by filing a responsive brief on the merits. Furthermore, the State acknowledged that the Court of Appeals had the discretion to hear the appeal and defendant's petition for writ of *certiorari*, included as part of his appellate brief, was denied as moot.

**2. Constitutional Law—ineffective assistance of counsel—failure to object**

Defendant received ineffective assistance of counsel when his trial counsel did not make a timely motion to suppress the statements and observations made during the warrantless entry of defendant's home. Because credibility was central to the jury's ultimate decision, and because the evidence had a strong tendency to corroborate the victim's account and contradict the defendant's version of events, it could not be concluded that there was not a reasonable probability of a different result in the absence of the alleged errors by counsel.

Appeal by Defendant from judgment entered 9 March 2012 by Judge W. David Lee in Richmond County Superior Court. Heard in the Court of Appeals 25 March 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas O. Lawton III, for the State.*

*Michele Goldman for Defendant.*

STEPHENS, Judge.

### *Procedural History and Evidence*

This matter arises from a violent encounter between Defendant Johnny R. Gerald and his then-girlfriend Lafonda Lee on the night of 2 July 2011. Defendant was tried on charges of attempted murder, assault with a deadly weapon inflicting serious injury ("AWDWISI"), and first-degree kidnapping. The jury acquitted Defendant of attempted murder, but returned guilty verdicts on the other two charges. Defendant then pleaded guilty to having attained the status of habitual felon. The trial court imposed an active sentence of 110 to 141 months imprisonment.

[1] Defendant timely filed a written notice of appeal. However, Defendant's notice of appeal failed to include proof of service on the State as required by our Rules of Appellate Procedure. *See* N.C.R. App. P. 4(a)(2). Our Supreme Court has noted that

> failure to serve the notice of appeal [is] a 98defect in the record analogous to failure to serve process. Therefore, a party upon whom service of notice of appeal is required may waive the failure of service by not raising the issue by motion or otherwise and by participating without objection in the appeal[.]

*Hale v. Afro-American Arts Int'l, Inc.*, 335 N.C. 231, 232, 436 S.E.2d 588, 589 (1993) (per curiam). Here, the State has not objected to the appeal by motion or otherwise and has participated by filing a responsive brief on the merits. Further, the State has acknowledged that this Court has the discretion to hear this appeal. We conclude that the State has waived the failure of service, and accordingly, we deny Defendant's petition for writ of *certiorari*, included as part of his appellate brief, as moot.

The evidence at trial tended to show the following: On the evening of 2 July 2011, Defendant and Lee returned to Defendant's home after spending several hours drinking tequila with another couple. Lee also smoked marijuana and used other drugs. Defendant and Lee planned to attend a Fourth of July party later that evening at a bar where Lee

worked as a bartender. Defendant and Lee gave drastically different accounts of the events that unfolded next.

Defendant testified that he wanted to call for a ride to the party because Lee was very impaired, while Lee insisted on driving herself. During the debate about driving, Defendant discovered cocaine in Lee's belongings and flushed it down the toilet. Lee became enraged and punched Defendant in the nose and hit him with a stick. As Defendant tried to stop his nose from bleeding, he saw Lee pulling a gun from her purse. Defendant grabbed the gun away from Lee, who then went into a bedroom. Defendant hid the gun and then went into the bedroom where he discovered Lee partially undressed. Defendant told Lee to get ready because he was going to call her brother to come and pick her up. Lee came at Defendant with a knife, cutting him in the side. Defendant grabbed the knife away from Lee cutting her hand in the process and hitting her near the right eye. Lee fled into a bathroom. Shortly thereafter, Defendant heard a noise and went to check on Lee. He discovered the bathroom window open and looked out to see Lee running across the yard away from the house.

In contrast, Lee testified that once she and Defendant returned to his house, Defendant decided he did not want to go to the party. Lee still planned to go and went into the bathroom to get ready. When Lee came out of the bathroom, Defendant punched her twice in the face, and after she fell to the floor, continued to hit and kick her with his motorcycle boots. Lee testified that she lost consciousness repeatedly during this assault. At one point, Lee was able to get free and went to the living room to retrieve her gun from her purse but could not find it. Defendant wrestled Lee to the floor, kicked her in the face, and pushed and shoved her back into the bedroom, continuing to beat her. Lee also testified that Defendant pulled her hair out at several points during the assault. In the bedroom, Defendant assaulted Lee with a knife, cutting her hand as she tried to defend herself. Defendant then pulled off some of Lee's clothes and shoved her into the bathroom. Once Defendant closed the door, Lee climbed out the window and dropped about nine feet to the rocky ground below. Lee fled to the home of a neighbor, who called 911. Emergency medical service workers took Lee to the hospital.

Lee's brother, Eric Bullard ("Bullard"), and his wife Christy were notified by the neighbor about what had happened. Bullard went to Defendant's home later that night, but the door was locked and no one answered. The next day, Bullard returned to Defendant's home with his wife where they met Deputy Clyde William Smith, Jr. ("Deputy Smith"),

of the Richmond County Sheriff's Office ("RCSO"). The three entered Defendant's home, and while Deputy Smith waited in the living room, the Bullards spent about 30 to 45 minutes gathering "evidence" and taking photographs throughout the house. Deputy Smith testified about his observations of blood and disarray in the living room area of the home. The case was assigned to Detective Dennis Smith of the RCSO on 5 July 2011. The Bullards then turned over to Detective Smith most of the evidence they had collected from Defendant's home ("the Bullards' evidence"). Detective Smith testified that the scene of the crimes (Defendant's home) was not properly secured and that no warrant was obtained for the Bullards' search of Defendant's home.

The Bullards' evidence was admitted at trial without objection. Specifically, the State introduced Lee's torn, bloody clothes and photographs showing blood and disarray at Defendant's home. However, Defendant's trial counsel did make an oral motion to suppress the Bullards' evidence *after* its admission, suggesting some items might have been tampered with. The trial court denied the motion, noting that the evidence had already been admitted without objection and was before the jury.

## Discussion

On appeal, Defendant makes three arguments: that (1) he received ineffective assistance of counsel ("IAC") when his trial counsel failed to make a timely motion to suppress the Bullards' evidence and Deputy Smith's testimony, (2) the trial court erred in denying his motion to dismiss the first-degree kidnapping charge, and (3) the trial court erred in determining Defendant's prior record level for sentencing him following his guilty plea to having attained the status of habitual felon.

**[2]** Defendant first argues that he received IAC when his trial counsel failed to make a timely motion to suppress the Bullards' evidence and Deputy Smith's observations during the warrantless entry of Defendant's home. We agree.

In his brief, Defendant specifically contends that there could be no trial strategy that could justify a decision not to try to suppress the Bullards' evidence and Smith's observations and that Defendant was prejudiced by that decision. On 19 March 2013, Defendant filed a motion for appropriate relief with this Court alleging IAC and making substantially the same arguments as contained his brief. The MAR includes an affidavit by Defendant's trial counsel stating that he had no "strategic or tactical reason for not challenging the constitutionality of the warrantless entry into [Defendant's] home[.]"

When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness. In order to meet this burden [the] defendant must satisfy a two part test.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (citations, quotation marks, and emphasis omitted).

Claims of IAC "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citation omitted), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). However, "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding." *Id.* at 167, 557 S.E.2d at 525 (citation omitted).

Defendant's trial essentially came down to a question of credibility between Defendant and Lee. Both parties testified to a bloody and physical confrontation that moved from room to room in Defendant's home and during which some of Lee's clothes were removed. The contested issues were who had instigated the conflict and which party had done what during its course. The Bullards' evidence and Deputy Smith's observations were the result of a patently unconstitutional seizure, and the trial court would certainly have suppressed the evidence had trial counsel made a proper motion to do so. The State agrees that the evidence was obtained in violation of Defendant's constitutional rights, but asserts that trial counsel's failure to move for its suppression could have been the result of trial strategy. Specifically, the State contends that admission of this evidence was not prejudicial because it was not inconsistent with Defendant's account of the confrontation. Further,

STATE v. GERALD

[227 N.C. App. 127 (2013)]

the State asserts that admission of the evidence may even have been beneficial to Defendant because it permitted him to establish on cross-examination that law enforcement officers failed to properly secure the scene and never performed blood tests or took fingerprints from any of the evidence.

Our review of the Bullards' evidence and Deputy Smith's testimony reveals that they are much more consistent with Lee's account of the confrontation than with Defendant's, and that several observations and photos are directly contradictory to Defendant's version of events. In particular, Deputy Smith described his observation of bloody handprints along a wall in the hallway, bloody handprints where someone had held onto the wall, and bloody fingerprints "dragging down the wall" of the hallway. These observations all support Lee's account of Defendant beating her bloody in the living room and then dragging her down the hall back to the bedroom. Defendant specifically denied dragging Lee down the hall and denied seeing any blood on the walls of the hallway. Thus, Deputy Smith's testimony regarding his observations of the scene completely corroborates Lee's version of what happened and completely contradicts Defendant's testimony.

In addition, photos taken by the Bullards showed Lee's ripped bra and torn shirt, which supports Lee's description of Defendant tearing her clothes off. Defendant, however, denied ripping Lee's clothing. Further, a photo showing blood and hair in the shower also supports Lee's testimony about Defendant pulling her hair out at several points during the struggle. Defendant denied pulling Lee's hair.

As for the idea that Defendant may have benefitted from showing law enforcement incompetency on cross-examination, as noted above, the central issue here was whether Defendant or Lee was most credible in their testimony about the events of 2 July 2011. We see little if any benefit to a general challenge to the work or professionalism of the RCSO. Only Deputy Smith's testimony about his observations during the warrantless search was pertinent to any disputed issues at trial. We find it nonsensical to assert that permitting damaging testimony in order to impeach the witness with that testimony could be a valid strategic decision, when a motion to suppress would have kept the damaging evidence out entirely. Further, with his MAR, Defendant has submitted an affidavit from his trial counsel which flatly states that trial counsel "did not have a strategic or tactical reason for not challenging the constitutionality of the warrantless entry into [Defendant]'s home either before or during trial." In light of these circumstances, we conclude that trial

counsel's "conduct fell below an objective standard of reasonableness." *Braswell*, 312 N.C. at 561-62, 324 S.E.2d at 248 (citation and quotation marks omitted).

For the same reasons discussed above — the centrality of Defendant's and Lee's credibility to the jury's ultimate decision and the strong tendency of the Bullards' evidence and Deputy Smith's observations to corroborate Lee's account and contradict Defendant's version of events — we cannot conclude that there is not a "reasonable probability that in the absence of [trial] counsel's alleged errors the result of the proceeding would have been different[.]" *Id.* at 563, 324 S.E.2d at 249. Accordingly, Defendant has established that he received ineffective assistance of counsel and is entitled to a new trial.[1] In light of this result, we need not address Defendant's remaining arguments.

NEW TRIAL.

Chief Judge MARTIN and Judge HUNTER, ROBERT C., concur.

---

1. The record on appeal, including Defendant's MAR, is entirely sufficient for this Court to resolve Defendant's IAC claim without further investigation or development of his claims. *See Fair*, 354 N.C. at 166, 557 S.E.2d at 524.