An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-814

Filed 17 September 2025

Gaston County, No. 22CRS330441-350

STATE OF NORTH CAROLINA

v.

MALIK ABDUR RAHMAN PRINCE

Appeal by Defendant from judgments entered 26 January 2024 by Judge R. Gregory Horne in Gaston County Superior Court. Heard in the Court of Appeals 12 June 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Matthew Baptiste Holloway, for the State.*

*Willingham Law, by Jackie Willingham, for the Defendant.*

WOOD, Judge.

Malik Abdur Prince ("Defendant") appeals from judgments entered upon a jury verdict finding him guilty of attempted first-degree murder and assault with a deadly weapon with the intent to kill inflicting serious injury. On appeal, Defendant argues the trial court erred by failing to instruct the jury on attempted voluntary manslaughter and on voluntary intoxication although neither were requested by

defense counsel at trial. Additionally, Defendant argues defense counsel was ineffective for not requesting either jury instruction. After careful review of the record, we conclude Defendant abandoned both issues raised under plain error review for failing to make necessary arguments on appeal, and we dismiss his ineffective assistance of counsel arguments without prejudice to his right to file a motion for appropriate relief with the Superior Court.

## I.    Factual and Procedural Background

On 28 October 2022, Defendant, Amanda Dillion ("Dillion"), and Jose Sanchez ("Sanchez") worked a shift together at Texas Roadhouse and made plans to hang out afterwards at Dillion's house. Dillion and Sanchez were in a new romantic relationship, and this was the first time they spent time with Defendant outside of work, aside from the occasional ride home. At the end of their shift, around midnight, Sanchez offered Defendant a ride because, as usual, Defendant had ridden his bicycle to work. On their way to Dillion's house, Sanchez and Defendant stopped at a QT gas station to purchase alcohol.

Defendant, Dillion, and Sanchez hung out in the downstairs area of Dillon's home while Dillion's mother and daughter were asleep upstairs.[1] Together they drank a fifth of rum while socializing and playing cards. Sanchez and Defendant also had "some beers," and Dillion and Defendant shared a marijuana joint. At one point

---

[1] Dillon's mother and daughter were not involved in the evening's events.

during the evening, Defendant directed rap lyrics about his "private part[s]" towards Dillion and Sanchez, making Dillion uncomfortable.

After a few hours, Dillion offered for Defendant to stay the night at her house and sleep on an air mattress. Dillion testified that later she was falling asleep and wanted to lie down but Defendant was not ready to do so. Dillion eventually fell asleep but awoke around 3:30-4:00 a.m. to find Defendant acting paranoid and Sanchez attempting to figure out why. Dillion testified that "[Defendant] was just saying how he was feeling things in the room, feeling bad energy, or hearing things in the room." Sanchez unsuccessfully tried to calm down Defendant. Defendant commented to Dillion and Sanchez "that it would be in [their] best interest if [they] stay sitting on [Dillion's] bed and do not approach him." Immediately following that comment, Dillion jumped up, grabbed her coat and keys, and told Defendant that she was going to take him home. She testified she did not want Defendant lingering outside the house on his bicycle so she "figured [it] would be the best bet to get him home, away from [her] house." Defendant did not argue with Dillion or Sanchez about leaving.

While still in the driveway, Dillion turned up the music in an effort to keep everyone calm and prevent arguing. Dillion drove her four-door SUV while Sanchez rode in the front passenger seat and Defendant sat in the backseat behind Dillion. Sanchez gave Dillion directions to Defendant's house.

Defendant testified he asked to be let out of the car several times but Dillion refused. In contrast, Dillion testified Defendant did not say anything at all during the car ride. As they were approaching the intersection of East Long Avenue and Broad Street, Sanchez stated to Dillion that he thought Defendant "may have a knife," to which Dillion responded, "just watch him." Approximately three minutes from Defendant's home, Dillion saw "a red beam on [her] dashboard." Defendant leaned forward between the front seats, and "within seconds, shots were just going off." After the second shot, Dillion threw her car in park, jumped out, and ran behind her vehicle and then to the sidewalk where she called 911.

Sergeant David Rowland of the Gastonia Police Department ("Sergeant Rowland") responded to the scene within a minute of the 911 call. Sergeant Rowland testified he saw Defendant come out of the woods with his hands up in the air, holding a handgun in one hand. Sergeant Rowland told Defendant to drop the handgun, which Defendant did almost immediately, and then instructed Defendant to "step to his left" and then "to have a seat on the curb." Defendant followed all his instructions. Sergeant Rowland testified that when he asked Defendant what was going on, Defendant answered, "he was out with his friends drinking." Sergeant Rowland testified that "[Defendant] kept talking about a song on the radio. [Defendant] couldn't get past this statement. [Defendant] just kept saying it over and over and over. [Defendant] said, it was the way they played the song, it was the way they

played the song, it was subjective." Sergeant Rowland's testimony continued as follows:

> Q. All right. So please continue. What did defendant say to you?
>
> [Sergeant Rowland]. Let me find my place. He said - - he kept talking about the way [Sanchez] was looking at him. Stated, [Sanchez] gave him a look. And I asked him about defending himself. And he stated that, [Sanchez] gave him a look because [Sanchez] heard [him] click [his] shit back. And he did this while making a racking motion, as in wracking the slide of a semi automatic handgun.
>
> Q. So the defendant said that, [Sanchez] gave [him] a look because he heard me click my shit back.
>
> And what else did the defendant tell you?
>
> [Sergeant Rowland]. He stated that, and I quote, a little bit happened and then shit happened. He stated, and I quote, it wasn't a pop pop right off because my shit jammed. He once again was making a motion of racking a slide on a semi-automatic handgun. I then asked him what happened, and he said he had to defend himself.
>
> Q. All right. And he told you, his shit jammed - - -
>
> [Sergeant Rowland]. Yes.
>
> Q. - - - while he was making the motion for a firearm?
>
> [Sergeant Rowland]. Correct.

Defendant at no point told Sergeant Rowland that Sanchez had a weapon, attacked him, or made verbal threats toward him. Sergeant Rowland's bodycam footage was introduced as evidence and viewed by the jury.

On 26 January 2024, a jury found Defendant guilty of attempted first-degree murder and guilty of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant then admitted to the existence of aggravating factors, admitting he "knowingly created a great risk of death to more than one person by means of a weapon, which would normally be hazardous to the lives of more than one person . . . [and] the serious injury inflicted upon the victim is permanent and debilitating." On 29 January 2024, Defendant gave notice of appeal in open court.

## II.    Analysis

Defendant brings two primary issues on appeal. First, Defendant argues the trial court committed plain error by not instructing the jury on attempted voluntary manslaughter. Second, Defendant contends the trial court committed plain error by not instructing the jury on voluntary intoxication after defense counsel failed to request either instruction at trial. Additionally, Defendant argues that trial counsel's failure to request the jury instructions on both attempted voluntary manslaughter and voluntary intoxication constitutes ineffective assistance of counsel.

## A. Jury Instructions

Trial court decisions regarding jury instructions are generally reviewed *de novo. State v. Brichikov*, 281 N.C. App. 408, 414, 869 S.E.2d 339, 344 (2022). However, Defendant's arguments about whether the jury should have been instructed on attempted voluntary manslaughter and voluntary intoxication were not properly preserved because defense counsel did not request either instruction at trial or object

to the jury instructions. Thus, we review these issues only for plain error. *State v. Buchanan*, 292 N.C. App. 304, 311, 898 S.E.2d 1, 6 (2024).

For error to constitute plain error, a defendant must demonstrate (1) "that a fundamental error occurred at trial;" (2) that the error had a "probable impact" on the outcome, meaning that "absent the error, the jury probably would have reached a different result[;]" and (3) that the error is an "exceptional case" that warrants plain error review, typically by showing that the error "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *State v. Reber*, 386 N.C. 153, 174-75, 900 S.E.2d 781, 796-97 (2024); *Buchanan*, 292 N.C. App. at 311, 898 S.E.2d at 6.

A defendant must argue and offer support for each element of plain error on appeal or else the issue is deemed abandoned. *State v. Patterson*, 269 N.C. App. 640, 645, 839 S.E.2d 68, 72 (2020). Here, Defendant has failed to provide the "necessary reasons or arguments as to why the alleged error rises to plain error. He offers nothing on why this is an exceptional case or why this will seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* Absent Defendant's argument as to why the trial court's alleged error for failure to instruct the jury on attempted voluntary manslaughter and voluntary intoxication warrant classification as an exceptional case, "we cannot impart any meaningful review for plain error." *Id.* Thus, we deem Defendant's arguments abandoned and hold the trial court did not commit plain error.

**B. Ineffective Assistance of Counsel**

Next, Defendant argues he received ineffective assistance of counsel because his defense counsel failed to request jury instructions on the lesser included offense of attempted voluntary manslaughter and for voluntary intoxication.

"Generally, a claim of ineffective assistance of counsel should be considered through a motion for appropriate relief before the trial court in post-conviction proceedings and not on direct appeal." *State v. Allen*, 262 N.C. App. 284, 285, 821 S.E.2d 860, 861 (2018). This Court prefers motions for appropriate relief over a direct appeal because "[t]o defend against ineffective assistance of counsel allegations, the State must rely on information provided by defendant to trial counsel, as well as defendant's thought's, concerns, and demeanor." *State v. Buckner*, 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000). To prevail on a claim for ineffective assistance of counsel Defendant must prove "that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). Here, the record reveals Defendant's ineffective assistance of counsel claim is better suited for the Superior Court as it can "assess the allegations in light of all the circumstances known to counsel at the time of representation." *Buckner*, 351 N.C. at 412, 527 S.E.2d at 314.

Based on the foregoing, we conclude Defendant improperly raised his ineffective assistance of counsel argument directly on appeal. Rather, this issue should have been raised in a motion for appropriate relief with the Superior Court.

Accordingly, we dismiss Defendant's ineffective assistance of counsel argument without prejudice to his right to file a motion for appropriate relief.

### III.   Conclusion

For the foregoing reasons, we hold Defendant has abandoned his arguments regarding plain error in the jury instructions and hold the trial court did not commit plain error.   We dismiss Defendant's ineffective assistance of counsel argument without prejudice to his right to file a motion for appropriate relief.

NO PLAIN ERROR IN PART; DISMISSED WITHOUT PREJUDICE IN PART.

Judges ARROWOOD and FLOOD concurs.

Report per Rule 30(e).