An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-121

Filed 1 October 2025

Cleveland County, No. 22CRS051762-220

STATE OF NORTH CAROLINA

v.

CAMERON DUANE CANIPE, Defendant.

Appeal by Defendant from judgments entered 25 July 2024 by Judge Todd Pomeroy in Cleveland County Superior Court. Heard in the Court of Appeals 27 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Hilary R. Ventura, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katherine Jane Allen, for Defendant.*

GRIFFIN, Judge.

Defendant Cameron Duane Canipe appeals from judgments entered after a jury found him guilty of two counts of indecent liberties with a child, specifically his

daughter Ashley.[1]  Defendant argues his counsel's failure to object to Defendant's being shackled during the trial amounted to ineffective assistance of counsel.  We disagree.

## I.    Factual and Procedural Background

In 2022, Ashley, fourteen years old at the time and attending middle school, was living with Defendant, her father.  One day while Ashley was home with just Defendant, Defendant made an alcoholic beverage for Ashley and encouraged her to drink it.  Then, Defendant asked Ashley questions about losing her virginity and told her that he could pleasure her with his finger.  During this conversation, Defendant also showed Ashley pornographic videos of three people engaged in sexual intercourse.  During the same interaction, Defendant asked Ashley if she wanted to see a real penis.  This conversation made Ashley uncomfortable.  Defendant's abnormal behavior and questioning stopped when his girlfriend returned to the house.

About two weeks after the first encounter, Defendant, Ashley, and Defendant's girlfriend were all home together.  Defendant and Ashley were in the living room while the girlfriend was working from home in a separate room with the door closed. In this instance, instead of speaking, Defendant used his phone's Notes application to type out messages to Ashley and would promptly delete the messages after he

---

[1] We use a pseudonym in place of the minor's name to protect the minor's identity. *See* N.C. R. App. P. 42(b).

showed them to her. In these typed messages, Defendant questioned Ashley about losing her virginity, offered to buy her a gift if she showed him her breasts, and urged Ashley to let him pleasure her as, Defendant encouraged, it would improve her attitude and release endorphins.

Shortly after these incidents occurred, Ashley told her mother about them. Ashley's mother reported the incidents to the Department of Social Services. Then, law enforcement took over the case and met with Defendant on 25 May 2022 to conduct an interview, which was recorded with audio and video by the sheriff's office.

During the interview, Defendant admitted to having a sexual conversation with Ashley and asking her to keep the conversation private. In his admission, Defendant included that he told Ashley he could please her with one finger. He also confessed that his pants were unbuttoned during the conversation. About a month after the interview, a Cleveland County grand jury indicted Defendant on two counts of indecent liberties with a child.

The Cleveland County Sheriff's Office requires all defendants in custody to remain shackled during trial. Here, the trial court took precautions to ensure the jury would not see Defendant's shackles at trial. During the trial, which began on 23 July 2024, Defendant was shackled, but the shackles remained out of the jury's sight. Before the jury entered the courtroom, Defendant was seated with his legs hidden from the jury's view. Furthermore, Defendant did not depart until the court confirmed the hallway was free of jury members.

Two days after the trial's commencement, the jury found Defendant guilty of both counts of indecent liberties with a child. The trial court gave Defendant an active sentence. Defendant timely appeals.

## II. Analysis

Defendant contends he received ineffective assistance of counsel, pointing to his trial counsel's failure to object to Defendant wearing shackles during the trial.

Federal and North Carolina law maintain the same test for ineffective assistance of counsel claims. *State v. Braswell*, 312 N.C. 553, 562–63, 324 S.E.2d 241, 248 (1985). To succeed on an ineffective assistance of counsel claim, Defendant must show both that (1) counsel's performance was deficient and (2) such deficient performance prejudiced Defendant's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006).

A performance is deficient when counsel makes such egregious errors that counsel failed to qualify as "counsel" as guaranteed by the Sixth Amendment of the United States Constitution. *Strickland*, 466 U.S. at 687. In other words, counsel is held to an objective standard of reasonableness under typical professional conduct. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Allen*, 360 N.C. at 316, 626 S.E.2d at 286.

In order to demonstrate that counsel's deficient performance prejudiced Defendant's defense, Defendant must show a reasonable probability, sufficient to undermine the original result, that the proceeding's outcome would have differed but for counsel's errors. *Allen*, 360 N.C. at 316, 626 S.E.2d at 286. The probability of an

alternate outcome "must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted).

North Carolina courts maintain the presumption that trial counsel's representation falls within reasonable professional norms. *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004) (citation omitted). The Court need not determine whether counsel's performance was deficient if a reviewing court can determine at the outset that there is no reasonable probability of a different outcome in absence of counsel's errors. *Braswell*, 312 N.C. at 563, 324 S.E.2d at 249.

An ineffective assistance of counsel claim is "decided on the merits when the cold record reveals that no further investigation is required." *State v. Fair*, 354 N.C. 131, 166, 577 S.E.2d 500, 524 (2001). Thus, if such claim is brought prematurely, this Court shall dismiss it without prejudice. *State v. Thompson*, 359 N.C. 77, 122–23, 604 S.E.2d 850, 881 (2004) (citation omitted). This allows Defendant to pursue a "subsequent motion for appropriate relief in the trial court." *Id.*

Trial courts may not routinely shackle defendants; rather there needs to be a particularized reason for it. *Deck v. Missouri*, 544 U.S. 622, 627 (2005). Generally, a defendant is entitled to appear at trial without shackles. *State v. Tolley*, 290 N.C. 349, 365, 226 S.E.2d 353, 366 (1976) (citations omitted). Shackling is inherently prejudicial, so the burden is placed on the State to show the necessity of shackles. *Id.* at 366, 226 S.E.2d at 367. However, if the record does not note that Defendant's shackles were visible to the jury, the risk of prejudice becomes negligible, and, thus,

Defendant will likely not be entitled to a new trial. *State v. Holmes*, 355 N.C. 719, 729, 565 S.E.2d 154, 163 (2002); *State v. Simpson*, 153 N.C. App. 807, 809–10, 571 S.E.2d 274, 276 (2002).

Here, Defendant argues his counsel's failure to object to Defendant's shackling during trial constituted ineffective assistance of counsel. We begin with an assessment of prejudice to determine if there would be probability of a different outcome due to counsel's alleged ineffectiveness. Without prejudice, we do not need to determine whether counsel's performance was deficient.

There is no evidence in the record that the jury saw Defendant's shackles, let alone that it was aware of them. Before the trial began, the trial court took care to ensure that the jury could not see Defendant's shackles during the entirety of the trial: it ensured Defendant was in his seat with his legs hidden at all times from the jury. Additionally, the trial court confirmed the hallways of the courthouse were clear of any jury members before Defendant departed the courtroom. Moreover, the State presented only the audio of Defendant's confession to avoid the video footage of Defendant wearing shackles. Since nothing in the record indicates that the jury saw Defendant's shackles, the risk of prejudice becomes negligible. *Holmes*, 355 N.C. at 729, 565 S.E.2d at 163; *Simpson*, 153 N.C. App. at 809–10, 571 S.E.2d at 276.

Defendant argues the rattling sound of the shackles prejudiced him. However, the record does not indicate that any noise came from the shackles. Before the trial started, the court noted it wanted to avoid putting Defendant on the stand while

wearing shackles to protect Defendant from prejudice due to potential rattling. Defendant did not end up taking the stand. Beyond the court's mention of desiring to prevent such prejudice, the record includes no evidence of noise coming from the shackles.

Since the risk of prejudice due to shackling is negligible, there is not a reasonable probability that the jury would have come to a different outcome as to Defendant's findings of guilt. The State called four witnesses during the trial, including Ashley, the interviewing officer, and Ashley's mother. The witnesses provided corroborating evidence. Ashley testified with specificity. Defendant bolstered Ashley's testimony with his confession during his law enforcement interview, where he admitted engaging in a sexual conversation with Ashley and offering to pleasure her with his finger. This admission supported Ashley's testimony and the other witnesses' accounts. During trial, the State presented part of Defendant's confession on audio to the jury. Defendant did not call any witnesses and rested after the State concluded its case. Consequently, the probability of an alternate outcome is far from substantial.

Even assuming some error by counsel, there is no prejudice to Defendant, and no ineffective assistance of counsel. Whether or not counsel's performance was deficient is now inconsequential. Defendant failed to demonstrate a reasonable probability that the proceeding's outcome would have differed but for counsel's alleged errors.

### III.    Conclusion

In conclusion, we hold Defendant's claim of ineffective assistance of counsel fails.  Defendant received a fair trial, free from error.

NO ERROR.

Judges CARPENTER and MURRY concur.

Report per Rule 30(e).