TYSON, Judge, dissenting.
This Court's prior issuance of a writ of certiorari brings review of defendant's IAC claim properly before us. Defendant has failed to show the performance of his appellate counsel in the prior appeal was deficient. The record contains sufficient evidence of all elements of the charge of robbery with a dangerous weapon. I would affirm the trial court's denial of defendant's motion for appropriate relief, and find no error in defendant's jury conviction and the judgment entered for robbery with a dangerous weapon. I respectfully dissent.
I. Standard of Review
"To show ineffective assistance of appellate counsel, [d]efendant must meet the same standard for proving ineffective assistance of trial counsel." State v. Simpson , 176 N.C.App. 719, 722, 627 S.E.2d 271, 275 (2006) (citing Smith v. Robbins , 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756, 780 (2000) ) disc. review denied , 360 N.C. 653, 637 S.E.2d 191 (2006). Judge Stroud accurately sets forth our standard of review to determine ineffective assistance of counsel.
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
*366 Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).
II. State's Evidence
Appellate counsel in defendant's prior appeal was not deficient. Sufficient evidence was presented to the jury on each element of the charge of robbery with a dangerous weapon, to include defendant's identity as a perpetrator. Defendant's trial counsel moved to dismiss the charges at the close of the State's evidence and renewed her motion at the close of all the evidence. Defendant did not testify or offer any evidence at trial. Upon a motion to dismiss, evidence presented by the State is reviewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom." State v. Irick , 291 N.C. 480, 491, 231 S.E.2d 833, 840 (1977). The trial court heard and considered the evidence, and denied the motions to dismiss.
The fingerprint evidence in this case does not "stand alone" to warrant a higher level of scrutiny. Citing Irick, Judge Stroud asserts appellate counsel on the prior appeal was deficient, and our Court must "focus on whether 'substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed.' " Id . at 492, 231 S.E.2d at 841. Presuming the plurality's notion that this higher level of scrutiny is required, "[o]rdinarily, the question of whether the fingerprints could have been impressed only at the time the crime was committed is a question of fact for the jury." Id. at 489, 231 S.E.2d at 839.
The assertion that "[t]he circumstances of the crime alone provide no evidence which might show that 'the fingerprint [ ] could only have been impressed at the time the crime was committed' " is incompatible with the record evidence. The record shows the State produced more than just "stand alone" evidence of defendant's fingerprint on the exterior of the victim's plastic backpack to help identify defendant to this crime.
The victim called the police immediately after he was robbed on the sidewalk near 325 Buck Jones Road. The victim testified he did not see the faces of his assailants, but saw their hands and arms. He described a perpetrator's hands as calloused, described the color of shirt sleeves, and the race and sex of both attackers. The victim indicated it sounded like his assailants had fled across Buck Jones Road. The police canines were able to track the perpetrators to a common area in the back of Portree Place townhomes, not far from the crime scene at 325 Buck Jones Road.
Trial testimony placed Portree Place townhomes near the intersection of Buck Jones Road and Bashford Drive. Detective Codrington testified Westcliff Court was "very, very close as far as the proximity, and it would explain ... from the direction that the person ran from after [the robbery], explains that sort of in the direction of Westcliff Court and Little Sue's Mini-mart which everybody cuts behind." He testified that near the time of the crime "[a]ll the info [he] could gather" pointed to defendant "living at 448 Westcliff Court," near the crime scene. Detective Codrington testified the Westcliff Court entrance is right on Bashford Road, parallel to the side of the Little Sue's Mini-mart and near the back of Portree Place townhomes to where the canines tracked the attackers.
Three weeks after the victim was robbed, defendant was stopped by police on Westcliff Court for an illegal tint on his vehicle's windows, a few hundred yards from the crime scene. Defendant was arrested on the outstanding robbery warrant and was taken into the station for questioning.
Detective Codrington interviewed defendant. Defendant waived his right to remain silent and was unable to account for his whereabouts on the night of the robbery. Defendant offered an alternative "hypothesis" about how his fingerprint could have been placed upon the victim's backpack.
Defendant told the detective that perhaps "someone he knew had a bag that he had presumably touched and then that bag had gotten stolen, and that's how [the victim's] bag" may have "had his fingerprint on it." During his interview, Defendant did not identify who that "someone he knew" was, or *367 possibly when, where, and how he could have touched the victim's backpack and left his identifiable fingerprint thereon other than during the robbery.
The State also offered the testimony of the crime scene investigator, who lifted defendant's print from the backpack, as well as the testimony of Officer Heinrich, the latent unit supervisor at the City County Bureau of Identification [CCBI]. Officer Heinrich testified defendant was linked by CCBI's database to the latent prints lifted from the backpack. Once the database produced matches, Heinrich physically reviewed the prints and concluded it was defendant's fingerprint present on the outside of the backpack.
The victim testified he had owned the backpack for 6 months and wore it to and from work. He indicated he wrapped the pack inside a jacket before he hung it on the employee coat rack in "the dry stock past the kitchen" in "an employee only" area at his work. The victim testified one of his assailants held him down, while the other was "going through his pockets and pawing around in [his] backpack."
III. Ineffective Assistance of Appellate Counsel
Effective appellate advocates winnow out weaker arguments and focus on those more likely to prevail on appeal. Jones v. Barnes , 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987, 994 (1983). This accepted discretionary process lies within the professional judgment of appellate counsel. When the State's evidence is sufficient to support a conviction, defendant's counsel may use his professional judgment and select what he believes to be "the most promising issues for review." Id. at 752, 103 S.Ct. at 3313, 77 L.Ed.2d at 994. This record and defendant's MAR provide nothing to support a claim that defendant's appellate counsel was ineffective, either under the standards provided by the Supreme Court of the United States or the Supreme Court of North Carolina to vacate his conviction on ineffective assistance of counsel. See Strickland , 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 673; State v. Braswell , 312 N.C. 553, 324 S.E.2d 241 (1985).
Defendant-Irick argued to our Supreme Court that the fingerprint evidence should not have been admitted into evidence until after the State showed that the print could only have been impressed at the time the crime was committed. The Supreme Court found defendant to have misconstrued the cases on this subject. Irick , 291 N.C. at 488, 231 S.E.2d at 839. The Court held "the probative force, not the admissibility, of a correspondence of fingerprints found at the crime scene with those of the accused, depends on whether the fingerprints could have been impressed only at the time the crime was perpetrated." Id. at 489, 231 S.E.2d at 839.
As discussed by the plurality, the defendant in Irick also challenged the trial court's denial of his motion for nonsuit (dismissal). Id. at 490, 231 S.E.2d at 840. The Irick Court recognized that a key piece of circumstantial evidence to connect the defendant in the case was the fingerprint identification.
The Irick Court found other circumstances tended to show the defendant was the criminal actor. The defendant was observed by a police officer coming from the general direction of the burglarized home shortly after the burglary transpired; the defendant had loose bills in the same denominations and total amount as those stolen; the defendant was tracked by the bloodhound from one crime scene to another, and attempted to flee from the police soon after the burglaries took place. The Court held "[a]ll of these circumstances, taken with the fingerprint identification, when considered in the light most favorable to the State, permit a reasonable inference that defendant was the burglar at the Hipp house." Id. at 492, 231 S.E.2d at 841-42.
When viewed in the light most favorable to the State, all of the circumstances shown by the State permit a reasonable inference that defendant was one of the robbers of Mr. Major. Where there is more than just fingerprint evidence "standing alone," the State is not required to provide a higher level of "substantial evidence of circumstances from which the jury can find the fingerprint[ ] could only have been impressed at the time the crime was committed" to survive a motion to dismiss.
*368 Id. at 491-92, 231 S.E.2d at 841. In addition, "[o]rdinarily, the question of whether the fingerprints could have been impressed only at the time the crime was committed is a question of fact for the jury." Id. at 489, 231 S.E.2d at 839.
IV. Conclusion
Upon defense counsel's motion to dismiss for insufficiency of the evidence, the trial court reviewed the evidence, twice denied the motions, and allowed the case to be decided by the jury. The jury heard all of the evidence, the trial court's instructions, and found defendant to be guilty of robbery with a dangerous weapon beyond a reasonable doubt.
The test of the sufficiency of the evidence to withstand such a motion is the same whether the evidence is circumstantial, direct, or both. When the motion for nonsuit calls into question the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.
Id . at 491, 231 S.E.2d at 841 (quotation marks and citations omitted) (emphasis supplied).
Reviewing the uncontroverted facts offered by the State, in the light most favorable to the State, the trial court properly denied defense counsel's motion to dismiss at the close of the State's evidence and at the close of all evidence. Appellate counsel apparently knew the standard of review and this question of fact was a jury issue, and made a tactical decision not to raise this issue on appeal. Defendant failed and cannot show his appellate counsel was deficient in his failure to raise the trial court's denial of defendant's motions to dismiss in defendant's initial appeal. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The standard of review applicable to this appeal and the questions of fact for the jury should end our inquiry at the first prong.
Defendant also fails to meet Strickland's second prong: but for appellate counsel's alleged "deficient performance" a different result would have occurred had the argument been raised by counsel on his prior appeal. Id. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The conclusions to find error under either prong and vacate defendant's conviction is error. No error occurred in the trial court's denials of the motions to dismiss, the submission of the fingerprint evidence to the jury, and the jury's verdict or the judgment entered thereon. I respectfully dissent.