Battle J.
 

 In the bill of exceptions filed by the prisoners
 
 *512
 
 several errors are assigned, which we will proceed to consider in the order in which they appear.
 

 1. The first is founded upon a motion made in the court below to quash the indictment because it had been found by a grand jury drawn from a
 
 venire
 
 in which there were no colored freeholders. His Honor refused the motion, because the jury list from which the
 
 venire
 
 was selected did not have upon it the names of any colored freeholders, the County Court not having constituted a jury list containing the names of such colored freeholders at that time. We think the motion was properly overruled. The jury list was constituted, and the
 
 venire
 
 drawn from it, in accordance with the law as it then stood, and .therefore no just exception could be made to it. See Eev. Code, ch. 31, sec. 25.
 

 2. The second exception relates to the manner in which the traverse jury was formed, and is settled against the prisoners by our decision in the case of the
 
 State
 
 v.
 
 Owen,
 
 at the present term.
 

 3. The third exception is founded upon the admission of Lydia Taylor as a witness for the prosecution. The allegation that she was the wife of the prisoner John Taylor, was clearly disproved by the testimony. While the parties were slaves she could not be recognized as the legal wife of the prisoner Taylor, and after they were emancipated he refused to marry her. She was in law nothing more than his concubine, and as such was a competent witness against him.
 
 State
 
 v.
 
 Samuel,
 
 2 Dev. & Bat., 177.
 

 4. The question of practice involved in the fourth exception was settled in the case of the
 
 State
 
 v. David, 4 Jon. 353, and nothing more need be said about it.
 

 5- The fifth exception is, for the rejection of the evidence that the prisoners had one or more opportunities to escape from jail and did not avail themselves of them. The argument in favor of the exception is, that as the flight of an al
 
 *513
 
 leged criminal is admissible as evidence against him, his refusal to fly in the first instance, and his declining to escape after having been committed to jail, ought to be admitted as evidence in his favor. The argument is plausible but it has been settled to the contrary upon the ground that it would be permitting prisoners to make evidence for themselves by their subsequent acts. See
 
 People
 
 v.
 
 Rathbun,
 
 21 Wend., 509;
 
 Campbell
 
 v.
 
 State,
 
 23 Ala. R., 44; Whar. Am. Cr. Law, sec. 714.
 

 6. The rejection of the examination of the witness Henry Wheeler, taken before the jury of inquest and examining magistrate, forms the sixth exception. The objection to the evidence was put upon two grounds, first, that the testimony was irrelevant, and, secondly, that it was not shown by the prisoners that Wheeler was dead, or what had become of him. His Honor rejected the evidence without stating his reasons for it. We are inclined to think that either ground of objection was sufficient, and we are entirely satisfied that the last was. The examination was, so far as we can see, offered as evidence in chief, and for that it was inadmissible without proof that the witness was then dead.
 
 State
 
 v.
 
 McLeod,
 
 1 Hawks, 344;
 
 State
 
 v.
 
 Valentine,
 
 7 Ire., 225.
 

 7. The seventh and last exception is based upon the reception in evidence of the deceased’s book of accounts for the purpose of showing the last entries which he had made just before he was killed. The case depended entirely upon circumstantial testimony, and we think the book was clearly admissible for the purpose of showing one of the links in the chain of evidence. It was not only evidence, but very material evidence tending to connect the prisoner John Taylor with the transaction. It was one of those circumstances surrounding homicide, which though apparently trifling in itself, often connects with other circumstances, and leads-to the detection of the perpetrator, and so has given rise to
 
 *514
 
 the short but awfully impressive maxim that “murder will out.”
 
 State
 
 v. Arthur, 2 Dev. 217.
 

 It must be certified to the Superior Court of Law for the county of Edgecombe that there is no error in the record, to the end that the court may proceed to pronounce the sentence of the law upon the prisoner.
 

 Per Curiam There is no error.