# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 24, 2011

Lyle W. Cayce
Clerk

No. 10-30431
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LAKEISHA SCHAFFER; FREDDIE G. ANDERSON, JR.,

Defendants-Appellants

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:08-CR-3-5

Before HIGGINBOTHAM, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

A jury convicted Freddie G. Anderson and his wife, LaKeisha Schaffer, of one count of conspiracy to steal and possess goods valued over $1000 and one count of interstate theft of goods, violations of 18 U.S.C. §§ 371 & 659. The district court sentenced Schaffer to concurrent terms of 33 months in prison and sentenced Anderson to concurrent terms of 41 months in prison. Schaffer argues that the district court erred in determining the amount of loss to calculate her guidelines offense level, while Anderson argues that the district court abused its

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

discretion by allowing a FBI agent to present opinion testimony on the subject of historical cell site analysis.

We review the district court's calculation of the loss amount and other background factual determinations for clear error and legal questions about the interpretation of the Guidelines, such as the method of determining loss, *de novo. United States v. Harris*, 597 F.3d 242, 251 & n.9 (5th Cir. 2010). Schaffer's assertion that the district court erred in determining that the intended loss was $341,000, the fair market value of the 31 stolen special edition Honda motorcycles, is without merit.

Schaffer and her co-conspirators initially believed that they were stealing a trailer containing four-wheelers; however, upon discovering that they had actually stolen the more expensive motorcycles, the conspirators did not attempt to return the goods or call the authorities, but instead continued with their plan to sell the stolen merchandise. This continued plan evidenced the group's intent to possess the motorcycles, even though the motorcycles were an unexpected discovery. Schaffer has not shown that she withdrew from the conspiracy. *See United States v. Caicedo*, 103 F.3d 410, 412 (5th Cir. 1997). Based upon the entire record, Schaffer has not demonstrated that the district court clearly erred in concluding that the conspirators intended to possess the stolen motorcycles. *See United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).

Moreover, the actual loss also equaled the $341,000 fair market value of the 31 stolen motorcycles. Even though the motorcycles were eventually recovered, the conspirators were not entitled to a reduction in the actual loss amount because they did not return the merchandise prior to the discovery of the theft. U.S.S.G. § 2B1.1, comment. (n.3(E)). Accordingly, it is immaterial whether the intended loss was less than the actual loss because, in general, "loss is the greater of actual loss or intended loss." § 2B1.1, comment. (n.3(A)); *see also United States v. Urias-Escobar*, 281 F.3d 165, 167 (5th Cir. 2002).

Anderson's assertion that the district court erred by allowing the expert testimony of Agent Chad Michael Creasey in the field of historical cell site analysis because the field "bears none of the indicia of scientific reliability that would justify an exception to the general prohibition against opinion testimony" is equally without merit. We review the district court's decision to admit or exclude evidence for abuse of discretion. *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the United States Supreme Court set forth a nondispositive, nonexhaustive list of factors that the district court could use to assess the reliability of scientific expert testimony, including (1) whether the expert's theory or technique can be tested or challenged in some objective sense; (2) whether the technique or theory has been subject to peer review or publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-95. Rule 702 of the Federal Rules of Evidence encompasses the *Daubert* inquiry, and also gives district courts flexibility in determining whether an expert's testimony is reliable. *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); FED. R. EVID. 702 advisory committee's note (2000 Amendments). The *Daubert* factors are meant to be helpful and not definitive, and the Supreme Court has recognized that all five factors do not "necessarily apply even in every instance in which the reliability of scientific testimony is challenged." *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 151 (1999).

Testimony established that the field is neither untested nor unestablished. Agent Creasey detailed his extensive knowledge and experience in the field. According to Agent Creasey, he had used the technique, without error, on at least 100 occasions, and the FBI had been successful at least 1000 times. Agent Creasey taught courses on the subject. Furthermore, individuals whom Agent

Creasey taught and supervised had used their historical cell site analysis training to provide expert testimony, and the technique has been accepted by approximately federal courts as a field of expertise. *See United States v. Weathers*, 169 F.3d 336, 339 (6th Cir. 1999) (allowing expert testimony based on cell site analysis); *United States v. Sepulveda*, 115 F.3d 882, 891 (11th Cir. 1997) (same).

Accordingly, Anderson has not demonstrated that the district court abused its considerable discretion by allowing Agent Creasey to testify as to his knowledge of historical cell site analysis and to use his knowledge to analyze the data contained in Anderson's Verizon cell phone bill to determine the past locations of Anderson's cell phone. *See Morgan*, 505 F.3d at 339. Even if the district court had abused its discretion by allowing Agent Creasey's testimony, Anderson cannot establish that his substantial rights were violated given that Jim Morris, the manager of system performance at Verizon Wireless Company, was qualified, without objection, as an expert in cell site analysis and provided similar testimony and conclusions as Agent Creasey. *See Morgan*, 505 F.3d at 339. The judgment of the district court is AFFIRMED.