IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-19

 No. COA19-615

 Filed 16 February 2021

 Wake County, No. 16 CRS 202713

 STATE OF NORTH CAROLINA

 v.

 MAJOR EARL EDWARDS, JR.

 Appeal by defendant from judgment entered 15 May 2018 by Judge Michael

 O’Foghludha in Wake County Superior Court. Heard in the Court of Appeals 22

 September 2020.

 Attorney General Joshua H. Stein, by Deputy General Counsel Blake W.
 Thomas, for the State.

 Glover & Petersen, P.A., by James R. Glover, for defendant.

 DIETZ, Judge.

¶1 Defendant Major Earl Edwards, Jr. appeals his conviction for first degree

 felony murder. Edwards argues that the trial court erred by declining his request for

 an instruction on lack of flight.

¶2 As explained below, the trial court properly declined to give that instruction

 based on the evidence at trial. Moreover, even assuming the trial court erred, the

 overwhelming evidence of Edwards’s guilt rendered that error harmless. We
 STATE V. EDWARDS

 2021-NCCOA-19

 Opinion of the Court

 therefore find no error in the trial court’s judgment.

 Facts and Procedural History

¶3 In 2016, Amigo Taxi cab driver Jose Dominguez responded to a call for a taxi

 at an apartment complex in Raleigh. A man got into the cab, shot Dominguez in the

 head, dragged him out of the cab, and then robbed him as he lay dead on the ground.

¶4 In the days leading up to the murder of Jose Dominguez, Defendant Major Earl

 Edwards, Jr. texted with another man, Conrad Patterson, and described obtaining a

 handgun. Edwards later texted Patterson explaining that “I got to make a move to

 keep my lights or they going to be cut off tomorrow at 10:00.”

¶5 Cell tower location data showed that Edwards and Patterson traveled from

 Edwards’s hometown of Louisburg to Raleigh on the night of the murder. Late that

 night, at 12:56 a.m., Edwards’s phone was used to look up the webpage for Amigo

 Taxi. At 1:04 a.m., Edwards’s phone made a 31-second call to Amigo Taxi. At 1:05

 a.m., Amigo Taxi dispatched Jose Dominguez to respond to that call at the pick-up

 location, a Raleigh apartment complex. One of Edwards’s relatives also lived at that

 apartment complex.

¶6 During the time period when the cab was on its way to the apartments,

 Edwards and Patterson again exchanged text messages. At 1:14 a.m., Edwards texted

 Patterson that he was “at the building to your right.” At 1:16 a.m., Patterson texted

 Edwards telling him to “delete all the messages out your phone that you sent to me,
 STATE V. EDWARDS

 2021-NCCOA-19

 Opinion of the Court

 your girl, or anybody just in case.”

¶7 Surveillance footage showed Dominguez’s taxicab reach the apartment

 complex shortly after. As the cab slowly drove through the complex, Dominguez called

 Edwards’s cell phone in a call that lasted 36 seconds.

¶8 Several witnesses saw the next series of events. First, Ray Jackson, who was

 visiting his girlfriend’s residence at the apartment complex, heard a gunshot and saw

 a flash from within the passenger area of the taxicab. Jackson then saw the shooter

 get out of the back seat of the car and fire into the front of the cab. The shooter also

 reached into the cab, took off Dominguez’s seat belt, and dragged him out of the car.

¶9 Around the same time, another witness, Eric Garrett, drove into the apartment

 complex and saw an “altercation” happening at the taxicab. Both witnesses saw the

 shooter rummaging through Dominguez’s pockets as he lay on the ground with

 gunshot wounds. The shooter then saw Garrett and fired three times at Garrett but

 missed. Garrett and Jackson saw the shooter run to a white car and get in.

 Surveillance video from this same time period showed a white, four-door car leaving

 the apartment complex.

¶ 10 Law enforcement and emergency personnel responded, but Dominguez already

 had died of his wounds at the scene, which included two gunshot wounds to the head.

 Investigating officers found a sweatshirt on the rear left floorboard of the taxicab.

 The sweatshirt had a cell phone in it. It was the prepaid cell phone that Edwards
 STATE V. EDWARDS

 2021-NCCOA-19

 Opinion of the Court

 used to communicate with Patterson. The phone also had photos connecting it to

 Edwards, including photos of Edwards, his State-issued identification card, and his

 electric bill. The phone also had a fingerprint on it that matched Edwards’s prints.

¶ 11 Officers went to Edwards’s home and found Edwards, Patterson, and another

 man near a white, four-door car resembling the one in the surveillance footage from

 the crime scene. The officers asked the men if they were willing to come to the station

 for questioning. The men agreed and drove the white car to the police station

 themselves.

¶ 12 The white car belonged to Patterson’s girlfriend, and she gave law enforcement

 officers consent to search it. The search uncovered blood matching Dominguez’s DNA

 on the front passenger armrest and shards of broken glass that matched the glass

 from Dominguez’s taxicab window. Investigators also found bloody clothes in a trash

 bin near Edwards’s home. The blood on those clothes was consistent with

 Dominguez’s blood sample. The bloody clothes included a gray sweater resembling

 one Edwards was seen wearing in surveillance footage on the day of the murder.

¶ 13 Edwards was indicted for first degree murder. The State presented the

 evidence described above. Edwards offered no evidence at the trial. Before the jury

 charge, Edwards requested an instruction on flight that permitted the jury to infer

 “innocence or a lack of guilt” from Edwards’s decision not to flee when investigators

 approached him at his home. The trial court declined to provide the requested
 STATE V. EDWARDS

 2021-NCCOA-19

 Opinion of the Court

 instruction. The jury found Edwards guilty of first degree felony murder. The trial

 court sentenced Edwards to life in prison without parole. Edwards appealed.

 Analysis

¶ 14 Edwards argues that the trial court erred by rejecting his proposed jury

 instruction addressing lack of flight. Ordinarily, when a defendant requests specific

 jury instructions, the trial court “must give the instructions requested, at least in

 substance, if they are proper and supported by the evidence.” State v. Edwards, 239

 N.C. App. 391, 392, 768 S.E.2d 619, 620 (2015). On appeal, we review de novo whether

 the evidence supported the requested instruction. Id. at 393, 768 S.E.2d at 621.

¶ 15 Here, Edwards requested the following jury instruction concerning flight:

 Proposed Jury Instruction—Lack of Flight

 The evidence shows that the defendant did not flee.
 Evidence of flight may be considered to show a
 consciousness of guilt. Evidence of lack of flight may be
 considered by you together with all other facts and
 circumstances in this case in determining whether the
 combined circumstances amount to a showing of innocence
 or a lack of guilt.

 The trial court declined to give this requested instruction.

¶ 16 There are several fatal flaws in Edwards’s argument with respect to this

 proposed instruction. As an initial matter, the instruction is not directed at Edwards’s

 actions at the crime scene. To the contrary, uncontested evidence indicates that the

 shooter—a man the State alleged was Edwards—fled the scene in a white car after
 STATE V. EDWARDS

 2021-NCCOA-19

 Opinion of the Court

 murdering Dominguez. It was only later, when investigators identified Edwards as a

 suspect, that they went to his home to question him and, at that time, he did not flee

 but instead cooperated with the investigation.

¶ 17 There are a number of cases from our Supreme Court indicating that, in this

 context, an instruction on lack of flight is inappropriate because it would permit

 defendants “to make evidence for themselves by their subsequent acts.” State v. Burr,

 341 N.C. 263, 297, 461 S.E.2d 602, 620 (1995). Thus, the “general rule is that the

 defendant in a criminal case is not, for the purpose of showing his innocence, allowed

 to prove that he refused to take to flight before his arrest or to escape from jail after

 his arrest.” Id. Accordingly, the trial court did not err by declining to provide the

 requested instruction.

¶ 18 In any event, even assuming the trial court erred by refusing to give the

 requested instruction, that error was harmless. An error at trial is harmless “unless

 there is a reasonable possibility that, had the error in question not been committed,

 a different result would have been reached at trial.” State v. Babich, 252 N.C. App.

 165, 172, 797 S.E.2d 359, 364 (2017). As explained in the recitation of facts above, the

 State had overwhelming evidence showing Edwards murdered Dominguez in a

 botched robbery, including witness testimony; surveillance footage; DNA, blood, and

 fingerprint analysis; and Edwards’s own statements in text messages on the cell

 phone he left at the crime scene. In light of all this evidence, there is no reasonable
 STATE V. EDWARDS

 2021-NCCOA-19

 Opinion of the Court

 possibility that, had the court given the requested instruction on lack of flight, the

 jury would have reached a different result. Id. Accordingly, even if the trial court’s

 failure to instruct on lack of flight was error, that error was harmless and could not

 result in reversal of the trial court’s judgment.

 Conclusion

¶ 19 We find no error in the trial court’s judgment.

 NO ERROR.

 Judge TYSON concurs.

 Judge MURPHY concurs in part and concurs in result only in part with

 separate opinion.
 No. COA19-615 – State v. Edwards

 MURPHY, Judge, concurring in part and concurring in result only in part.

¶ 20 I concur in the portion of the Majority which properly summarizes the current

 status of the law that an instruction on lack of flight is unavailable to Defendant.1

 However, in writing separately, and of little solace to Defendant, I agree that if we

 are going to continue to instruct jurors on flight, the opposite instruction must also

 be available to a defendant who does not flee. See State v. Thorne, No. COA19-159,

 267 N.C. App. 692, 833 S.E.2d 254, 2019 WL 4803677, *2 n.1 (2019)

 (unpublished), review denied, 373 N.C. 590, 837 S.E.2d 896 (2020); State v. Ellis, No.

 COA19-820, 848 S.E.2d 756, 2020 WL 6140639, (N.C. Ct. App. 2020) (unpublished).

¶ 21 As Defendant accurately observes in his brief, whether appropriate or not in

 our secular system, the principles underlying the flight instruction derive from

 Proverbs, “[t]he wicked flee when no one pursues, but the righteous are bold as a

 lion.” Proverbs 28:1 (English Standard Version); See State v. Irick, 291 N.C. 480, 494,

 231 S.E.2d 833, 842 (1977); State v. Dickerson, 189 N.C. 327, 331, 127 S.E. 256, 258

 1 Note that the law as correctly stated by the Majority in its citation to Burr, supra at

 ¶ 17, traces back to an 1868 decision by our Supreme Court, which begins:

 It is no ground to quash an indictment, that it was found by a
 grand jury drawn from a venire in which there were no colored
 freeholders--the jury list, as constituted by the county court in
 accordance with the law in force at the time of its constitution,
 not contai[ni]ng the names of such colored freeholders.

 State v. Taylor, 61 N.C. 508, 508 (1868). To suggest it is time for our Supreme Court to revisit
 the application of and reference to such an outdated case and one-sided application of jury
 instructions is self-evident.
 STATE V. EDWARDS

 2021-NCCOA-19

 Murphy, J., concurring in part and concurring in result only in part

 (1925). Flight is either important for the jury’s consideration of the evidence of

 Defendant’s guilt, or it is not.2

¶ 22 As we are bound by caselaw to reject Defendant’s argument as to the

 availability of his requested instruction, I concur in the analysis and result reached

 by the Majority. However, I do not join in the Majority’s harmless error analysis as

 I would find such consideration to be moot.

 2 I would also point out that the availability of an instruction that helps carry the

 burden of only one party in a criminal prosecution is itself constitutionally questionable.
 However, no such arguments have been raised at any point in this action and are not before
 us in this appeal.