IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-336

Filed 3 December 2025

Forsyth County, Nos. 22CR052297-330, 22CR052298-330, 22CR052299-330,

STATE OF NORTH CAROLINA

v.

KRISTAN JEVON ALLEN

---

Forsyth County, Nos. 22CR052505-330, 22CR052506-330, 22CR052507-330

STATE OF NORTH CAROLINA

v.

KEON JAYKWON RUSH

Appeal by defendants from judgments entered 31 May 2024 by Judge Alyson A. Grine in Forsyth County Superior Court. Heard in the Court of Appeals 5 November 2025 in session held at Wake Forest University School of Law in the City of Winston-Salem pursuant to N.C. Gen. Stat. § 7A-19(a) (2023).

*Attorney General Jeff Jackson, by Assistant Attorney General, J. Blake Norman, for the State.*

*Center for Death Penalty Litigation, by Kailey Morgan, for defendant-appellant Keon Jaykwon Rush.*

*Blass Law PLLC, by Danielle Blass, for the defendant-appellant Kristan Jevon Allen.*

TYSON, Judge.

Kristan Jevan Allen ("Defendant Allen") and Keon Jaykwon Rush ("Defendant Rush") both appeal from a jury's verdicts of guilty of two counts of assault with a deadly weapon with intent to kill inflicting serious injury, one count of assault with a deadly weapon with intent to kill, and seven counts of discharging a firearm into occupied property. We discern no prejudicial error.

## I. Background

Approximately eleven shots were fired from 9 mm and .45 caliber handguns by occupants of a blue Hyundai vehicle located near Kermit's Hot Dog restaurant in Winston-Salem on 25 March 2022. The shooting caused gunshot injuries to three victims and damaged the restaurant. Prior to the shooting, Defendant Allen and Defendant Rush were observed entering into a blue Hyundai vehicle on Marble Street with two other people. Defendant Rush was the driver and Defendant Allen was sitting in the rear passenger seat. Approximately six minutes later, the group drove to Kermit's Hot Dog restaurant. Camera footage from businesses in the area around the restaurant showed the vehicle passing the restaurant just before and just after the time of the shooting in that area.

Ross Flynt was struck by a bullet in his right side, causing severe pain and a

collapsed lung, with the bullet remaining near his heart. Patrick Carter sustained multiple gunshot wounds to his right upper leg and buttock. Loeza Miranda, who was inside the restaurant, was hit in the face by what was described as "little pieces of the bullet" when projectiles entered the glass doors. Sixteen shell casings were found outside the restaurant and several projectiles and metal fragments were found inside the restaurant.

After the shooting, Defendants Allen and Rush went separate ways. Defendant Allen went back to Marble Street and entered into a gold Chevrolet Malibu driven by Asia Baines ("Baines"), Defendant Allen's ex-girlfriend. Defendant Rush did not return.

Later in the evening, law enforcement officers observed Baines' gold Chevrolet Malibu pulling into a driveway. The officers approached the vehicle and ordered both Baines and Defendant Allen to exit the vehicle. Defendant Allen was handcuffed and frisked. Officers at the scene saw a 9mm handgun on the backseat floorboard behind the driver's seat and a box of ammunition in the driver's side door.

The blue Hyundai was found abandoned behind a vacant residence at 2610 Marble Street after a key fob recovered near the scene was used to locate the vehicle. Inside the blue Hyundai, Officer Young found a broken firearm magazine and ammunition scattered on the backseat floorboard.

Forensic evidence linked both Defendants to the Hyundai vehicle and the scene. The latent print examiner identified Defendant Allen's fingerprint and palm

print on the exterior rear passenger door of the blue Hyundai. He also identified Defendant Rush's fingerprint on the exterior gas tank filler of the blue Hyundai and on a cup found in the center console of the vehicle.

Federal Bureau of Investigation ("FBI") Special Agent Harrison Putman ("Agent Putman") qualified and testified as an expert witness in historical cell site analysis. Agent Putman prepared a written cellular analysis survey team ("CAST") report illustrating which cell site towers were accessed and used by Defendant Allen's T-Mobile cell phone and by Defendant Rush's AT&T cell phone on the day of the shooting. Agent Putman's expert report indicated neither of Defendants' phones had initiated cell site service in the area around Kermit's Hot Dog restaurant on the day of the shooting.

At trial, Agent Putman testified to a new opinion, not contained in his original written report, which he had formed on the sixth day of trial. Agent Putman testified that at 2:22 p.m. and at 2:26 p.m., Defendant Rush's AT&T phone had used the cell tower site next to Kermit's Hot Dog restaurant, which likely provided coverage to the area, which he described as "handoff" data stored by the cell service providers.

Agent Putman based his opinion upon voluminous data from the cell service providers. This data is produced by cell providers for billing and is not used to determine the location of a person or particular cell phone. Agent Putman admitted this data can be unreliable and testified some of the data was, indeed, unreliable, but he could also determine which data is reliable through his training and experience.

Agent Putman explained how "handoff" data is collected and stored, how this data is reflected in the records, and how this data can be especially useful to show movement of a cellular device across a stated or identified time and territory.

During trial, counsel for Defendant Rush objected to Agent Putman's testimony and the use of "handoff" data, because he did not believe such information had been provided in his discovery packet. Prior to the lunch recess, the trial court asked Defendant Rush's counsel to do "a little more research about what you did get in discovery and the authority." As soon as they returned, Defendant Rush's counsel stated he had verified the "handoff" data was provided in the discovery packet of evidence by the State. Counsel was then asked by the court if he had any concerns regarding the provision of the discovery. He responded he did not. Defendant Allen's counsel did not object to Agent Putman's testimony.

Both Defendants were convicted of two counts of assault with a deadly weapon with intent to kill inflicting serious injury, one count of assault with a deadly weapon with intent to kill, and seven counts of discharging a firearm into occupied property.

The trial court sentenced Defendant Allen as a Prior Record Level III offender with 6 prior record level points to three consecutive active sentences, in the presumptive range consisting of two 77-to-105-month sentences, and a 26-to-44-month sentence, as well as a concurrent 26-to-44-month sentence. The trial court sentenced Defendant Rush as a Prior Record Level II offender with 4 prior record level points to three consecutive active sentences, in the presumptive range consisting

of two 67-to-93-month sentences and a 23-to-44-month sentence, as well as a concurrent 23-to-40-month sentence. Defendant Allen and Defendant Rush gave oral notice of appeal on 5 June 2024.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. Issues

Both Defendants argue the trial court erred in admitting Agent Putman's expert testimony on historical cell-site "handoff" analysis and in failing to find a discovery violation due to purported "sandbagging" of discovery and delivery of evidence to both Defendants at trial. Both Defendants also argue they received ineffective assistance of counsel ("IAC").

## IV. Expert Witness

### A. Standard of Review

"Trial courts enjoy wide latitude and discretion when making a determination about the admissibility of [expert] testimony." *State v. King*, 366 N.C. 68. 75, 733 S.E.2d 535, 540 (2012) (citation omitted). A trial court's ruling on Rule 702(a) is reviewed for abuse of discretion "only upon [a] showing. . . its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) (citations omitted).

When the issue is whether "the trial court's decision is based on an incorrect

reading and interpretation of the rule governing admissibility of expert testimony, the standard of review on appeal is *de novo*." *State v. Parks*, 265 N.C. App. 555, 563, 828 S.E.2d 719, 725 (2019) (citation omitted).

## B. Rule 702 (a)

North Carolina's Rule of Evidence 702(a) provides, *inter alia*:

> (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2023).

Rule 702(a) governs the admission of expert witness testimony. *Id.* In 2011, our General Assembly amended Rule 702(a) to reflect the federal rule, which itself was amended in 2000 in response to the standards the Supreme Court of the United States articulated in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 125 L.Ed.2d 469 (1993), and later clarified in both *General Electric Co. v. Joiner*, 522 U.S. 136, 139 L.Ed.2d 508 (1997) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 143 L.Ed.2d (1999). Our Supreme Court held: "North Carolina is now a *Daubert* state." *State v. McGrady*, 368 N.C. 880, 888, 787 S.E.2d 1, 8 (2016).

In *McGrady*, our Supreme Court stated and interpreted the 2011 amendments to Rule 702(a) as and were enacted to "adopt[] the federal standard for the admission of expert witness testimony articulated in the *Daubert* line of cases[,]" and further held "the meaning of North Carolina's Rule 702(a) now mirrors . . . the amended federal rule." *McGrady*, 368 N.C. at 884, 787 S.E.2d at 5.

Rule 702(a) sets out specific elements and allows for testimony by qualified experts "in the form of an opinion, or otherwise" if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2023). *See Daubert*, 509 U.S. at 588, 125 L.Ed.2d at 480. "In order to assist the trier of fact, expert testimony must provide insight beyond the conclusions that jurors can readily draw from their ordinary experience." *McGrady*, 368 N.C. at 889, 787 S.E.2d at 8 (citation and internal quotation marks omitted).

The court's inquiry under Rule 702(a) involves a "three-step framework–namely, evaluating qualifications, relevance, and reliability[,]" *Id.* at 892, 787 S.E.2d at 10, and requires "expert testimony must satisfy each [factor] to be admissible." *Id.* at 889, 787 S.E.2d at 9.

### 1. *Objection and Preservation*

Defendant Rush and Defendant Allen were tried together, but each was represented by separate counsel. During the *voir dire* of Agent Putman, the trial court addressed each of Defendants' counsels individually:

THE COURT: Thank you. [Defendant Allen's attorney], do you want to be heard?

[DEFENDANT ALLEN'S ATTORNEY]: No, Your Honor.

THE COURT: Sir, do you have any objection?

[DEFENDANT ALLEN'S ATTORNEY]: I do not, Your Honor.

Defendant Allen failed to preserve this issue for appellate review. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling the party desired the party to make[.]" N.C. R. App. P. 10(a)(1).

Our appellate rules provide:

> Plain Error. In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C. R. App. P. 10(a)(4). Defendant Allen does not argue the admission of Agent Putman's testimony amounted to plain error. Defendant Allen failed to "specifically and distinctly contend[] . . . plain error" and is not entitled to plain error review on this issue. *Id.* His brief did not "specifically and distinctly" allege the admission of the expert testimony amounted to plain error. *See State v. Smith*, 269 N.C. App. 100, 105, 837 S.E.2d 166, 169 (2019) (citation omitted).

The trial court then heard from Defendant Rush's counsel arguing his Rule 702

objection. Presuming, without agreeing or deciding, Defendant Allen in any manner preserved this issue for appellate review, as held below, neither Defendant is entitled to any relief.

### 2. *Sufficient Facts or Data*

Agent Putman's testimony was grounded in "sufficient facts or data" and "reliable principles and methods" to satisfy Rule 702(a)(1). N.C. Gen. Stat. § 8C-1, Rule 702(a) (2023). He described in detail his "specialized knowledge" of and "experience, training [and] education" in CAST methodology, explaining how historical cell call detail and tower relation records are created by cellular providers, how those records are interpreted for forensic purposes, and how they can be mapped to approximate the general area of a device's use. *Id.* Agent Putman further testified he had manually verified each plotted record by comparing the raw provider data to its mapped rendering in order to ensure consistency and accuracy. This testimony tends to show Agent Putnam "applied the principles and methods reliably to the facts of the case." *Id.*

North Carolina courts have long held when an expert bases an opinion on data customarily relied upon in the field and explains how those data entries support the conclusion reached, the factual basis of the opinion affects the weight, not the admissibility, of the testimony. *Pope v. Bridge Broom, Inc.*, 240 N.C. App. 365, 374, 770 S.E.2d 702, 710 (2015).

Here, the data underlying Agent Putman's analysis, including the provider's

tower-usage records and geographic coordinates, are standard sources used in historical cell-site analysis nationwide. *State v. Perry*, 243 N.C. App. 156, 178, 776 S.E.2d 528, 542 (2015) (upholding admissibility of "ping" data). Federal courts have echoed this conclusion. *United States v. Jones*, 918 F. Supp. 2d 1 (D.D.C. 2013); *United States v. Schaffer*, 439 F. App'x 344, 347 (5th Cir. 2011); *United States v. Davis*, 2013 U.S. Dist. LEXIS 70371 (S.D. Fla. 2013); *United States v. Reynolds*, 2013 U.S. Dist. LEXIS 80828 (E.D. Mich. 2013). Defendants' counsels cross-examined Agent Putman thoroughly on matters including tower load, handoff data, error margins, and signal variance, but such questions go to credibility of the evidence and testimony, not to its admissibility. The trial court acted within its discretion in reviewing and concluding Agent Putman's testimony was based on sufficient facts and data.

### 3. *Reliable Principles and Application*

Agent Putman testified the CAST software is used merely as a mapping tool and does not form conclusions on its own. CAST software simply expedites the plotting of GPS coordinates derived from the carrier's records. Agent Putman further testified he had independently audited each plotted point, rather than relying solely on the software output. This level of manual verification directly addresses the *Daubert* factors as codified in Rule 702 concerning the expert's ability to explain *e.g.* error rate, standards controlling operation, and methodological reliability. *Daubert*, 509 U.S. at 594, 125 L.Ed.2d at 483; N.C. Gen. Stat. 8C-1, Rule 702 (2023).

- 11 -

Agent Putman also explained the inherent limitations of the CAST methodology, including tower load variability, overlapping coverage, and possible handoffs, and cautioned the jury that cell-site data provide only general approximations, not precise GPS-level tracking. This transparency enhances, rather than undermines, the reliability of the report and testimony. The trial court had ample basis to conclude Agent Putman's methodology was reliable and properly applied. Defendant Rush's argument is overruled.

### C. Harmless Error

Presuming, *arguendo*, the admission of Agent Putman's testimony fell short of the requirements of Rule 702, any such error was harmless. A new trial is warranted only when "there is a reasonable possibility . . . , had the error not been committed, a different result would have been reached at trial." *State v. Babich*, 252 N.C. App. 165, 172, 797 S.E.2d 359, 364 (2017) (citation omitted). Given the other extensive corroborative evidence admitted in this case, no such possibility exists. *See State v. Lance*, 277 N.C. App. 627, 636-37, 861 S.E.2d 1, 8 (2021).

The State presented surveillance footage showing both Defendants entering the blue Hyundai vehicle shortly before the shooting, eyewitness testimony describing four occupants of a vehicle consistent with the Hyundai, forensic results identifying both Defendants' fingerprints recovered from inside and outside the vehicle, and physical evidence, including broken firearm magazines, found within the blue Hyundai. Additional testimony placed Defendant Allen in constructive

possession of a 9mm firearm shortly after the offense. In light of this overwhelming independent evidence, the cell-site analysis merely corroborated what the remainder of the State's case independently established. Even if the admission of Agent Putman's testimony was erroneous, Defendants have not met their burden to show prejudice.

Agent Putman's testimony satisfied the requirements of Rule 702. His opinions were grounded in sufficient facts and data, derived from methods consistently accepted by courts, and applied reliably to the facts of the case. The trial court acted within its broad discretion in determining Agent Putman's testimony would assist the jury and met the reliability thresholds mandated by *Daubert*, *Kumho Tire*, *Joiner*, and Rule 702(a). N.C. Gen. Stat. § 8C-1, Rule 702(a) (2023).

Even if any aspect of Agent Putman's testimony was admitted in error, Defendants cannot demonstrate a reasonable possibility of a different outcome considering the substantial independent evidence linking them to the offense. The trial court did not abuse its discretion in admitting the expert testimony. Defendants' Rule 702 challenge is without merit and overruled.

## V. Discovery Violation

Both Defendants argue the trial court erred by failing to exclude the State's expert testimony when the State had failed to disclose its expert's opinion until the night before the expert testified. We disagree.

During trial, and prior to Agent Putman testifying, Defendant Rush's counsel

objected to the introduction of the cell "handoff" evidence. Prior to a lunch recess, the trial court asked both Defendants' counsels to conduct "a little more research about what you did get in discovery and the authority." Upon returning, Defendant Rush's counsel stated "one of the court's requests over the break was for me to verify the data was in the discovery the State provided. It is in there." The trial court then asked if there was "Anything further?" Defendant Rush's counsel responded, "No, Your Honor." Neither Defendant Rush nor Defendant Allen objected to this testimony. Both Defendants failed to preserve this issue on appeal. *See State v. Herring*, 322 N.C. 733, 748, 370 S.E.2d 363, 373 (1988) ("When the State offered footprint comparison evidence, the defendant did not object or request sanctions against the State. The defendant may not now complain that the trial court abused its discretion in failing to sanction the State for this alleged discovery violation. Having failed to draw the trial court's attention to the alleged discovery violation, the defendant denied the court an opportunity to consider the matter and take appropriate steps."). Defendants' arguments are overruled.

## VI. Ineffective Assistance of Counsel

Defendants alternatively assert their counsels' failure to: object to the alleged discovery violation, object to Agent Putman's surprise testimony, or to hire an expert in historical cell site analysis constituted IAC.

In order to show IAC, a defendant must satisfy the two-pronged test announced by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S.

668, 80 L. Ed. 2d 674 (1984). The *Strickland* test for IAC has been adopted by the

Supreme Court of North Carolina for state constitutional purposes. *State v. Braswell*,

312 N.C. 553, 324 S.E.2d 241 (1985).

To show a counsel's purported deficient performance prejudiced him, a

defendant "must show that his counsel's conduct fell below an objective standard of

reasonableness." *Id.* at 561-62, 324 S.E.2d at 248 (citing *Strickland*, 466 U.S. at 688,

80 L. Ed. 2d at 693.)

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693; *accord Braswell*, 312 N.C. at 561-62,

324 S.E.2d at 248.

Our Supreme Court stated it "ordinarily do[es] not consider it to be the function

of an appellate court to second-guess counsel's tactical decisions[.]" *State v. Lowery*,

318 N.C. 54, 68, 347 S.E.2d 729, 739 (1986). The Court added that when reviewing

an IAC claim, "this Court engages in a presumption that trial counsel's

representation is within the boundaries of acceptable professional conduct." *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004) (citation omitted).

The trial transcript shows both defense attorneys demonstrated meaningful command of cell-site methodology during *voir dire* and cross-examination of Agent Putman. Both counsels probed records maintenance, triangulation, tower distance, error sources, reliability, and tower handoffs. Their examination reflected familiarity with the field and targeted potential weaknesses in the State's presentation. On this record, the decision not to object to the handoff data admittedly provided by the State during discovery reasonably falls within permissible trial strategy, not constitutionally deficient performance. *State v. Prevatte*, 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002).

Presuming, without agreeing or deciding, any deficiency existed, Defendants failed to and cannot show prejudice. Independent of the cell-site analysis, the State presented substantial evidence placing Defendants in the blue Hyundai before, during, and after the shooting. Surveillance identified both Defendants entering the car and depicted the vehicle in the area around the time of the offense, eyewitnesses identified the car and its occupants, fingerprints from both Defendants were inside and outside of the vehicle, broken firearm magazines were recovered from the car, Defendant Allen returned to Baines's vehicle after the shooting and Defendant Allen's constructively possessed a 9mm handgun when located. In light of this evidence, Defendants have not established a reasonable probability of a different result absent

the challenged conduct. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693.

Defendants fail to satisfy either *Strickland* prong. The challenged decisions, how to engage with Agent Putman's testimony, and whether to object to handoff data disclosed in discovery, were decided within the wide range of reasonable professional assistance. That is particularly true in these cases given counsels' demonstrated technical familiarity at *voir dire* and during cross-examination. *See Prevatte*, 356 N.C. at 236, 570 S.E.2d at 472.

If those tactical choices were deemed deficient, the State's non-cell-site data proof, being surveillance, eyewitness identification with seating positions, forensic fingerprint matches inside the blue Hyundai, physical firearm components and ammunition recovered from inside the vehicle, post-offense movements of participants, and Allen's constructive possession of a 9mm and ammunition, independently and powerfully corroborate guilt. On this record there is no "probability sufficient to undermine confidence in the outcome." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (citation omitted). Defendants' arguments are overruled.

## VII.    Conclusion

The trial court acted within its discretion in admitting Agent Putman's testimony under Rule 702; any asserted discovery violation under N.C. Gen. Stat. § 15A-903(a)(2) was unpreserved. Defendants' IAC claims fail on this record. Defendants received a fair trial free from prejudicial errors they preserved and

argued. There is no reversible error demonstrated in the jury's verdicts or the judgments entered thereon. *It is so ordered.*

NO ERROR.

Judges WOOD and FREEMAN concur.